Armour & Co., Plaintiff in Error, *vs.* The Industrial Board of Illinois, Defendant in Error.

*Opinion filed October 24, 1916—Rehearing denied Dec. 6, 1916.*

1. Workmen's compensation—*what must be held to be a warehouse or storehouse.* A building in which a meat corporation stores its products pending their sale and distribution to local dealers is a "warehouse or general or terminal storehouse," within the meaning of clause 4 of paragraph (*a*) of section 3 of the Workmen's Compensation act of 1913, even though no goods are stored for the public for hire.

2. Appeals and errors—*constitutional questions are waived by taking case to the Appellate Court.* Constitutional questions are waived by taking. a case to the Appellate Court, and they cannot be thereafter raised in the Supreme Court.

Writ of Error to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. Charles H. Bowles, Judge, presiding.

Alfred R. Urion, Charles J. Faulkner, Jr., and Walter C. Kirk, for plaintiff in error.

Acton & Acton, for defendant in error.

Mr. Justice Carter delivered the opinion of the court:

The Industrial Board of this State rendered a decision against plaintiff in error, Armour & Co., August 6, 1914, awarding, under the provisions of the Workmen's Compensation act of 1913, the sum of $2919 to the estate of Grover C. Richardson. After this court had held unconstitutional the part of the act of 1913 which provided that this court might review directly the decisions of the Industrial Board, (*Courter* v. *Simpson Construction Co.* 264 Ill. 488,) plaintiff in error, under the authority of that decision, caused to be issued from the circuit court of Cook county a common law writ of *certiorari* to review the holding of the board,

That court quashed the writ of *certiorari,* and on the proceedings being taken to the Appellate Court the judgment of the circuit court was affirmed. The cause has been brought here on petition for *certiorari.*

By the stipulation of facts found in the record it appears that Grover C. Richardson was employed by Armour & Co. at Danville, Illinois, doing general work in connection with the handling and shipping of products by that company in said city. He began work October 23, 1913, and continued in the employment of Armour & Co. until his death, four days later, from injuries received while operating a freight elevator in plaintiff in error's plant, in the usual course of his employment and in the discharge of duties arising therefrom. He was caught in some manner between the elevator platform and the second floor of the building, but it is unknown just how the accident occurred. Due notice was given the employer of the accident and claim filed with the Industrial Board within six months of the time of the injury. It further appears from said stipulation that plaintiff in error, Armour & Co., is a corporation organized under the laws of New Jersey and licensed to do business in Illinois; that it operates a number of wholesale distributing houses in several cities of Illinois; that in the conduct of its business at the various wholesale distributing points it is a separate and distinct corporation from Armour & Co., a corporation organized under the laws of this State for operating packing and slaughtering establishments. The New Jersey corporation purchases practically all its goods from the Illinois corporation. The business of the New Jersey corporation at Danville, Illinois, as well as at the other wholesale distributing houses in different cities of the State, consists in receiving meats and provisions and distributing them at wholesale to dealers in the surrounding territory. The business at Danville is conducted in a three-story and basement brick building at 39-41 Washington avenue, the title to which is in the New Jersey corpora-

tion. The third floor of the building is used for smoking meats; the second floor for storing smoked meats, provisions, canned goods, etc.; the first floor, part of which is used for shipping purposes and part for offices, is equipped with a cooler, where fresh meats are held pending sale; the basement is used for the storage of barreled goods and pickled and salted meats. No manufacturing or preparation of products is conducted in said building, except the smoking of meats on the third floor. No power-driven machinery of any kind is employed on the premises, with the exception of one ten-horse-power electric freight elevator running from the basement to the top floor, operated by means of ropes attached to an electric mechanism. It can be operated from all floors, and it is not necessary for the person who operates it to ride thereon but employees frequently ride on it when operating it for freight purposes, the rule of the company being that it should not be operated for passenger purposes, only. Goods are received in the plant from railway cars which are switched alongside the building and unloaded by trucks, the meat and other goods being taken from the building for distribution among dealers by wagons and auto trucks. The carcass meats are pushed to and from the cooler by the aid of hooks suspended from and running along hanging rails. The products of this building are stored therein only the length of time requisite to sell them to dealers in Danville and the vicinity,—in the case of fresh meats rarely longer than a week, but smoked meats are stored from one to three weeks or more. No goods are stored for other persons, for hire or otherwise. The deceased left him surviving a widow and two minor children. Plaintiff in error, the New Jersey corporation, has never elected to come under said Workmen's Compensation act.

Counsel for plaintiff in error contend that it does not come within the provisions of said Workmen's Compensation act of 1913. Counsel for defendant in error, on the

other hand, contend that plaintiff in error is liable under the provisions of paragraph (b) of section 3 of said act, which reads: "The provisions of paragraph (a) of this section shall only apply to an employer engaged in any of the following occupations, enterprises or businesses, namely: * * * 4. The operation of any warehouse or general or terminal storehouses; * * * 8. In any enterprise in which statutory or municipal ordinance regulations are now or shall hereafter be imposed for the regulating, guarding, use or the placing of machinery or appliances, or for the protection and safeguarding of the employees or the public therein; each of which occupations, enterprises or businesses are hereby declared to be extra-hazardous." (Laws of 1913, p. 339.) Counsel for defendants in error contend that plaintiff in error is within the provisions of clause 8 above, because the operation and use of elevators in said city were regulated by a general ordinance of the city of Danville in force at the time of the accident.

Did the legislature intend that a building used for the purposes such as the one here in question is used should be considered as a warehouse, as that word is employed in said clause 4 of paragraph (b)? Webster's Dictionary defines "warehouse" as "a storehouse for wares or goods; a receiving house. The term is broadly used, and may include any structure used to store goods in. A wholesale shop or store, or sometimes a large retail establishment." According to the Century Dictionary a warehouse is "a house in which wares or goods are kept; a storehouse. Specifically, (a) a store in which goods are placed for safekeeping; a building for the temporary deposit of goods for compensation. * * * (c) A store for the sale of goods at wholesale; also, often, a large retail establishment." It is also defined as "a place adapted to the reception and storage of goods and merchandise;" (Bouvier's Law Dict.—3d rev.—3424; Black's Law Dict.—2d ed.—1218;) also as "a place used by the occupant for the storage of goods, and the term

is synonymous with storehouse;" (30 Am. & Eng. Ency.
of Law,—2d ed.—38;) and "a place where goods are re-
ceived in store for profit." (40 Cyc. 400.) Obviously, from
these various definitions, the meaning of this word in any
given case must depend quite largely upon the connection in
which the word is used, and if it occurs in a statute the
purpose and object of the statute may throw considerable
light on its meaning. This court has never had occasion to
construe this word as used in this statute, though in *Uphoff*
v. *Industrial Board,* 271 Ill. 312, the intention of the legis-
lature in enacting this law is discussed at some length, as
well as the various occupations and employments that were
proposed to be brought within its provisions. The Illinois
compensation laws were taken, with certain modifications,
from the Workmen's Compensation act theretofore enacted
in Great Britain. (Lust on Workmen's Compensation Law
of Illinois, 2.) The decisions of the courts of that country
are therefore of assistance on subjects in our act that are
also covered by the Workmen's Compensation act of Great
Britain. In *Hunt* v. *Grantham Co-operative Society,* 112
L. T. 364, it was held that a single loft, thirty feet long
and fifteen feet wide, over a stable included in a block of
buildings in which respondents conducted their stores, was
a storeroom and not a warehouse, the room being used for
storage purposes ancillary or incidental only to the main
business carried on by the proprietors. The same finding
was made as to goods stored in the basement of a building
pending their sale in the shops above. *(Burr* v. *Whiteley,*
19 Times L. R. 117.) In *Green* v. *Britten,* 6 W. C. C. 82,
it was held that the term "warehouse" could not be limited
to apply only to a building where the public could send
their goods to be stored; that the word was properly ap-
plied to a building used by the owner for the storage of
his own goods, the opinion stating that in enacting the law
the legislature "had in view the danger run by workmen
who have to handle goods on a large scale." (To the same

effect see *Wilmott* v. *Paton,* 4 W. C. C. 65, and *Adams* v. *Great Western Railway Co.* 6 id. 87.) In *Moreton* v. *Reeve,* 2 K. B. (1907) 401, the court referred approvingly to the doctrine laid down in *Green* v. *Britten, supra,* and also stated that under certain circumstances storerooms connected with retail establishments may be warehouses.

Counsel for plaintiff in error argue that the word "warehouse," as used in this law, should be construed to mean only a public warehouse in which property is stored for compensation or profit, because paragraph 1 of article 13 of the constitution calls elevators and storehouses used to store property for compensation "public warehouses." We think this argument is without merit. Had the legislature intended this provision of the statute to refer only to public warehouses used for storing property for compensation it could easily have made that fact clear by inserting in the statute the word "public," or other suitable words that would plainly indicate a warehouse storing goods for profit. The basis for the classification of the various occupations under the Workmen's Compensation act is largely the probability of danger to employees by reason of the nature of the work in which they are engaged. The work connected with the storage of provisions by plaintiff in error in this building, awaiting distribution in a wholesale trade, is no less hazardous in that the property stored is its own than if said company were storing such goods for third persons for hire. The risk and danger to the employee would be equal in both cases. It is manifest, however, that the legislature did not intend to include within the meaning of the word "warehouse" every place where goods are stored by the owner, for that might make it apply to the storing by any citizen of a barrel of apples or potatoes in his cellar or basement, but if any person should store thousands of barrels of produce in a three-story building the work might readily be attended with considerable danger. The rule of the English courts seems to be that a warehouse or store-

room for the storage of goods in a wholesale business is necessarily a warehouse within the meaning of the Workmen's Compensation act, and that the circumstances may make a storeroom used in connection with a retail business a warehouse, as that term was used in the act. In *Green* v. *Britten, supra,* the court said (p. 86) that the word "warehouse" "involves the idea of a place normally of considerable size, * * * in which, consequently, the dangers incident to the handling of goods in bulk might * * * naturally arise." Why would the legislature use in this act, in connection with the word "warehouse," the words "general or terminal storehouses," if it intended to mean only public warehouses used for hire? It is well known that many large concerns in this country have general or terminal storehouses at certain points, where they hold their goods and distribute them to wholesale customers or to their retail business. Such storehouses are not public warehouses. We think it is clear, however, that the legislature intended to include the operation of such general storehouses in said clause 4 as a hazardous occupation. Indeed, it is not a strained construction of this statute to hold that this building can be fairly included within the term "general storehouse."

Counsel on the one hand argue at some length that this statute, being in derogation of the common law, should be strictly construed, while on the other hand it is argued that the statute, being remedial in its character, should be liberally construed.. The rules as to strict or liberal construction are of value only as assisting in finding the real meaning of the statute. They are not considered as important in recent years as formerly, for it has become more and more recognized that "the paramount duty of the judicial interpreter is to put upon the language of the legislature, honestly and faithfully, its plain and rational meaning and to promote its object." (Endlich on Interpretation of Statutes, sec. 329.) The intention of the law-makers is the

law, to be gathered from the reading of the statute, having in mind all the rules of construction which may apply. (*Warner* v. *King,* 267 Ill. 82, and authorities cited.) Both on principle and authority the premises upon which the accident occurred must be held a warehouse or storehouse, as those terms are used in the act in question. Plaintiff in error was operating its business therein for its own profit, but it was such a business as the legislature manifestly intended to include within the provisions of the act.

The conclusion as to the meaning of said clause 4 of paragraph (*b*) renders it unnecessary to consider whether plaintiff in error was also liable under the provisions of said clause 8 of paragraph (*b*).

Counsel for plaintiff in error have argued at some length that to construe the statute in this manner would render it unconstitutional, as depriving plaintiff in error, without any election on its part, of a right of trial by jury. As we understand this argument, they contend that plaintiff in error had a right to construe this statute as not applying to its business in this building at Danville, and therefore it was unnecessary for it to take any action with reference to electing or not electing to come under the act. In practical effect this is an argument against the constitutionality of the act. Its constitutionality cannot be raised in this court since it was not raised in the court below, (*Masonic Fraternity Temple Ass'n* v. *City of Chicago,* 217 Ill. 58,) and for the further reason that counsel waived all questions as to the constitutionality of the act by taking the case to the Appellate Court. *Haas Electric Co.* v. *Amusement Park Co.* 236 Ill. 452; *Luken* v. *Lake Shore and Michigan Southern Railway Co.* 248 id. 377.

The judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*