(No. 11870.—Reversed and remanded.)

EDMUND M. DUNNE, Catholic Bishop, Appellant, *vs.* THE
COUNTY OF ROCK ISLAND *et al.* Appellees.

*Opinion filed April 17, 1918—Rehearing denied June 5, 1918.*

· 1. STATUTES—*construction of act of 1915 prohibiting building of jail near school.* The act of 1915, (Laws of 1915, p. 491,) making it unlawful to build a jail within 200 feet of any building used exclusively for school purposes, applies to a building erected for and used as a parochial school, even though occasional use is made of some of the rooms for meetings and like purposes.

2. SAME—*statute cannot be evaded by making contract before the law takes effect.* An act of the legislature becomes a law upon its approval by the Governor even though it may not become operative to govern public conduct until the succeeding first day of July, but parties having notice of the passage of the law cannot evade its provisions by making a contract before the law takes effect, to do after the law takes effect the thing which it prohibits.

3. INJUNCTION—*owner of school building may maintain a bill to enjoin building of jail.* Under the act of 1915, (Laws of 1915, p. 491,) making it unlawful to erect a county jail within 200 feet of any building used exclusively for school purposes, the owner of such a school building may maintain a bill to enjoin the building of a jail in violation of the act even though the violation of the act is also a wrong against the public.

4. CONSTITUTIONAL LAW—*illegal contract is not within protection of constitution against impairment.* To afford a basis for invoking the constitutional prohibition against the passage of laws impairing the obligation of contracts there must be a valid contract, as the protection of such provision of the constitution does not extend to illegal contracts.

5. SAME—*act of 1915 is not invalid because it protects school property, alone.* The act of 1915, (Laws of 1915, p. 491,) prohibiting the erection of a jail within 200 feet of property devoted exclusively to school purposes, is not invalid because it protects school property, alone, as there is a well grounded basis for the classification.

6. COUNTIES—*a county cannot defeat its dedication by adverse possession.* Where a county has made a common law dedication to the public of a square in a city for purposes set forth in the plat, it cannot, under claim of its ownership of the fee or of its adverse possession of the land, defeat the easement acquired by the public by virtue of the dedication.

7. SAME—*constitutional provision as to county seats does not refer to the location of a building.* The constitutional prohibition against the removal of county seats except by a vote of the people has reference to the county town as the seat of government and not to the location of a county building at the county seat.

8. SAME—*the legislature has supreme control over property of county.* There is no unlawful taking of the property of counties by a general law, passed in the exercise of the police power, regulating the location of jails with reference to school buildings, as the legislature has supreme control of the property of counties, which are mere political subdivisions of the State.

9. SAME—*committee appointed by county board cannot contract for erection of·jail.* A county, in transacting its ordinary business, may appoint an agent, but neither the statute nor the general powers of the county board authorize a committee of the board appointed to receive bids for a jail to enter into a contract for building the same.

APPEAL from the Circuit Court of Rock Island county; the Hon. W. T. CHURCH, Judge, presiding.

J. F. MURPHY, and J. T. & S. R. KENWORTHY, for appellant.

FLOYD E. THOMPSON, State's Attorney, and SEARLE & MARSHALL, for appellee the county of Rock Island.

SHALLBERG & HARPER, for appellee Paul H. Lorenz.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On June 21, 1915, the appellant, Edmund M. Dunne, Catholic bishop, filed in the circuit court of Rock Island county his bill in this case against the county of Rock Island, one of the appellees, praying for an injunction to restrain the erection of a jail on the public square in the city of Rock Island on the ground that it would be an infringement of his easement as the owner of abutting property sold by the county with reference to the public square. The facts averred in the bill are stated in *Dunne* v. *County of*

*Rock Island,* 273 Ill. 53. The bill having been dismissed, this court held, on appeal, that on its face it stated a good cause of action and the decree was reversed and the cause remanded, with directions that the parties be required to make up issues by proper pleadings for a final hearing. The cause was re-instated in the circuit court, and in the meantime the General Assembly amended section 1 of the act entitled "An act to revise the law in relation to jails and jailers," in force July 1, 1874, to read as follows: "There shall be kept and maintained in good and sufficient condition and repair, a common jail in each county within this State, at the permanent seat of justice for such county. But it shall be unlawful to build a jail within 200 feet of any building used exclusively for school purposes." (Laws of 1915, p. 491.) The bill was amended by adding averments that the school building owned by the appellant had been for many years, and was then, used exclusively for school purposes, and that the jail building, if erected as proposed, would be within 96 feet of the building. The answer of the county admitted that complainant was Catholic bishop and the owner in fee of the lots described in the bill but denied that the building was used exclusively for school purposes, and alleged various grounds upon which it was claimed that the act of 1915 was unconstitutional and void. Paul H. Lorenz, who had contracted with the county to erect the building, intervened and was permitted to become a defendant. The issues were referred to a master in chancery to take the evidence and report the same with his conclusions. He took the evidence and reported the same with conclusions that the county commissioners did not dedicate the square to the public; that the municipality, the public and the complainant had no rights of property or otherwise in the square; that the county might erect the new jail on the square without hindrance, and that the complainant, by permitting buildings on the square, had lost his right to the application of the inhibition against the erection of the jail.

The cause was heard on exceptions to the master's report, which were overruled and the report was approved and confirmed and the amended bill dismissed for want of equity at the costs of the complainant. From that decree this appeal was prosecuted.

The original bill, which the court found on the former appeal stated a good cause of action on its face, was based on the alleged dedication of the public square to be kept open and free from encroachment for the uses and purposes named in the town plat and the right of the complainant derived from the ownership of lots abutting on the square, but on the re-instatement of the cause there were added, by amendment, averments which brought the complainant's property within the terms of the act of June 4, 1915, whereby the General Assembly had forbidden the erection of a jail within 200 feet of a building used exclusively for school purposes. An issue of fact was made up on the averment that the building was used exclusively for school purposes and an issue of law as to the validity of the act. If the building was used exclusively for school purposes and the act did not violate constitutional provisions for its enactment or interfere with constitutional rights, other questions raised concerning rights claimed under the original bill are eliminated and not to be considered.

The evidence concerning the uses of the school building was that it was built in the summer of 1912 at a cost of $55,000, was three stories in height and had been continuously occupied since it was built, nine months in the year, for a school, attended by from 380 to 460 scholars, in which all the branches of study taught in the public schools were taught and also commercial courses and music. There were fourteen teachers, a kindergarten, eight regularly organized grades and a night school. The first story was a large room used for the school entertainments, recitals by the music scholars and as a playroom for kindergarten children in bad weather. Back of that room were two rooms used as a

lunch room and toilet rooms for the children. The second floor was divided into rooms for classes and for teaching music and elocution, and the rooms on the third floor were similar to those on the second. During school hours no other business was conducted in the building and no part of it was ever rented to others for any period. The boys of the school had a club, called the Booster's Society, which met three or four times a year at night in the elocution room on the second floor and paid nothing for the accommodation. No other use was ever made of any part of the building except temporarily as an accommodation and interfering in no manner with the school. The Lady Foresters, a sororal order, met on the last Sunday of the month in a room in the building and paid $20 to cover janitor service, light and heat. There was an altar society of the adjacent Catholic church taking care of the linen, vestments and appurtenances of the altar, and it had sometimes held its meetings in the ante-room of the school. After the bill was filed, on two evenings during the summer vacation of 1915 a women's drill team of the Royal Neighbors of America desiring a room with a piano in it was permitted to use the hall in the school for practicing a drill and marching, and they paid $2 for the accommodation.

It is contended by counsel for the appellant that if the primary use of a building is for a certain purpose it is to be regarded as the exclusive use under the holding in *First Congregational Church* v. *Board of Review,* 254 Ill. 220, and by counsel for the appellees that the word "exclusively" is to be given an interpretation so strict that nothing must be done in a building within the terms of the act except conduct a school. These are extreme views, and on the one hand the use may be a primary or principal one but not exclusive, and on the other hand in determining whether the use is exclusive the term is not to receive an unreasonably narrow and constricted construction. There is, perhaps, no building erected for a particular use, without which

it would never be constructed or used, no part of which is ever used for any other purpose. School buildings are frequently used in political campaigns for political meetings, and at other times for lectures or social entertainments, and in time of war for patriotic meetings. Churches are used for marriages, charitable societies and social entertainments. Property of each must be used exclusively for its purpose to be exempt from taxation. If the act is to receive a strict construction, the rule is of value only in finding the real meaning of the statute, and "the paramount duty of the judicial interpreter is to put upon the language of the legislature, honestly and faithfully, its plain and rational meaning and to promote its object." *Armour & Co.* v. *Industrial Board,* 275 Ill. 328.

The decisions in reference to taxation have never given such a restrained and confined definition of "exclusive" use as is claimed in the argument for the appellees. In *First Methodist Episcopal Church* v. *City of Chicago,* 26 Ill. 482, the court held that the first story of the church building, occupied for stores, banking business and the like, and the second story, used for lawyers' and doctors' offices and other business purposes, were not exempt from taxation, but the main body of the third and fourth stories, used for religious purposes, was exempt, thereby separating the uses of the same building. In *Presbyterian Theological Seminary* v. *People,* 101 Ill. 578, the law only exempted from taxation the land upon which the institution was located and that land was exempt, but a separate tract of twenty acres, separated from that tract, on which no buildings were located, was not exempt. In *People* v. *Young Men's Christian Ass'n,* 157 Ill. 403, the association had an extensive five-story brick and stone building, part of which was rented to tenants at an aggregate rental of $11,000, consisting of a bank, title guarantee and abstract company, and a number of lawyers, dentists, doctors and insurance agents. No society, organization or person had any right in the building of the ap-

pellant as tenant or otherwise nor was permitted to make any use of any part of it except by permission for a temporary use and as an accommodation. The property therefore came within the terms of the act of June 24, 1915.

The complainant had a right to maintain his suit under the act in question, which was passed for the protection of property used for school purposes, because a violation of the act would inflict a special injury and damage upon the owner. There must be a special injury to give a complainant a standing in court, and when a wrongful act is a disturbance or obstruction only of the common and public right the sole remedy is by public prosecution, but if there is special damage to an individual, distinct from the public generally, it is immaterial that there is also a wrong against the public. (*Hoyt* v. *McLaughlin,* 250 Ill. 442.) A jail is a necessity for the administration of justice, and in the absence of any statute or other right a property owner can not prevent its erection in his vicinity or recover damages, but a jail, police station or the like causes a direct depreciation in the value of neighboring property. (*Rigney* v. *City of Chicago,* 102 Ill. 64.) In this case there is a threatened injury, and if the act is valid a prohibition against such injury exists and the appellant may enforce it.

The principal argument against the validity of the law is that it encroaches upon constitutional rights of the county because of what the county had done toward the erection of the jail before the act took effect on July 1, 1915. In 1835 the county built a jail on other property, which it sold, and in 1857 built a jail on the southwest corner of the public square. In 1914 a vote was taken for a bond issue to construct a new jail, and on December 10, 1914, the board of supervisors provided for appointment, by the chairman, of a building committee to investigate the subject and make recommendations. On February 15, 1915, the committee employed an architect and thereafter investigated the construction of modern jails, making many trips

over the country for that purpose.    They devised plans for
the jail and on March 11, 1915, made a report of what
they had done.    The action of the committee was approved
and the plans were adopted, but the site of the building was
changed from the northwest corner of the square to the
place opposite the school.    On March 12, 1915, the board
authorized the committee to advertise for bids to construct
the jail, and about May 14, 1915, the committee advertised
for such bids.    On June 3, 1915, bids were submitted, and
the defendant Paul H. Lorenz was found to be the lowest.
The committee assuming that it had power to authorize
him to go ahead, which it did not have, awarded him the
contract and urged him to get ready for the work.    No con-
tract was entered into, and the bill for the act of June 24,
1915, was pending in the General Assembly, and a commit-
tee of the board, with an attorney, went to Springfield and
opposed its passage.    On June 21 the original bill was filed
in this case, and it was dismissed by the court on June 25.
The board of supervisors on that day had notice that the
act had been passed and that an appeal had been prayed and
allowed from the decree dismissing the bill.    The commit-
tee then reported to the board their action for approval, and
the board authorized the committee to enter into a contract
for the construction of the jail and the committee executed
the contract.    After the execution of the contract, which
was the day after the approval of the act, the contractor
continued with his work, putting up an office building and
getting ready to perform his contract.    The work was con-
tinued to the extent of making an excavation and putting
in a basement wall for the jail, until the work was sus-
pended by the county.

Counsel invoke the rule that statutes are to be given a
prospective rather than a retroactive or retrospective oper-
ation unless there is language used in the statute so clear
that it will admit of no other construction.    (*Mix* v. *Vail,*
86 Ill. 40; *White Sewing Machine Co.* v. *Harris,* 252 id.

361; *Warner* v. *King*, 267 id. 82.) Upon the facts stated it is argued that if the act prevents the building of the jail it is retroactive and an interference with constitutional rights. The act did not go into effect until July 1, 1915, but under section 10 of article 5 of the constitution the act became a law of the State upon its approval by the Governor. (*People* v. *Inglis*, 161 Ill. 256.) The act is to be construed as prospective, and its prohibition was not effective until July 1, 1915. A statute passed to take effect at a future day is operative from that day and the intervening period is allowed to enable the public to become acquainted with its provisions, but until it becomes operative as a law the public are not compelled to govern their actions by it. (*Price* v. *Hopkins*, 13 Mich. 318.) The county had notice on June 25, 1915, that it would be unlawful after July 1, 1915, to build a jail within 200 feet of any building used for school purposes, and it knew that the building could not possibly be constructed in the six days before the act would take effect. The thing that was prohibited was the building of the jail. The constitutional provision invoked is that which prohibits impairing the obligation of a contract, and the county having entered into a contract to build a jail, the argument is that an act preventing the execution of that contract would impair its obligation. The conclusion of the Supreme Court of the United States in *Diamond Glue Co.* v. *United States Glue Co.* 187 U. S. 611, was that under such circumstances the law does not impair the obligation of a contract. In that case a contract was made on June 25, 1898, for carrying on the business of a foreign corporation in Wisconsin, and a law had been enacted, to go into effect on September 1, 1898, making it unlawful for a foreign corporation to do business in the State without a license from the Secretary of State. The court did not approve the claim that a party, by making a contract extending beyond the time when the law would become effective, would exonerate itself from law and by indirection accom-

plish its violation, and said that the parties had notice that, if nothing changed, the contemplated business would be unlawful by force merely of present conditions and the lapse of time, and that statements to the effect that suspended statutes are to be read as if passed on the day when they go into operation did not apply to such a ·case. The contract, here, could not be carried out without a violation of the act of June 24, 1915, after its prohibition became effective, and the constitution does not protect such a contract from impairment. There must be a valid contract as a basis for invoking the constitutional prohibition, and it does not afford a shelter to enable a party to execute one which is illegal. (6 R. C. L. 326.)

It is further contended that the act is unconstitutional as depriving the county of its property without due process of law, and this is, of course, based upon the claim that the county owns the public square either by original title or adverse possession. The county had title to the land and dedicated the square to the public. As the dedication was at common law it still owns the underlying fee but did not and could not dedicate the square to itself, and it is subject to the public right and easement, which are not the property of the county. It could not acquire title against its dedication by adverse possession, which does not run against the public as to public rights. (*Trustees of Commons* v. *McClure*, 167 Ill. 23; *Black* v. *Chicago, Burlington and Quincy Railroad Co.* 237 id. 500.) The dedication was to the public at large and no title could be built up under a claim of adverse possession, if ownership of the square could make any difference as to the validity of the act, passed in the exercise of the police power, to which all property is subject. Neither the case of *Board of Education of Normal School District* v. *Blodgett*, 155 Ill. 441, nor that of *Brown* v. *Trustees of Schools*, 224 id. 184, where statutes of limitation were applied in the case of school districts, gives any support to the claim. The property of school dis-

tricts is held and its use limited to the inhabitants of the local subdivision, and the questions involved did not relate to public and governmental rights in property. If the county acquired any right to occupy the square for county purposes it could not interpose an objection to legislative authority over the property. The General Assembly exercises the sovereign power of the State and administers its public and governmental functions. As far as governmental powers are concerned, the General Assembly has divided the State for the exercise of such powers, and a subdivision is a mere agent of the State, and its property acquired in its public and governmental capacity and devoted to public and governmental purposes is the property of the State. The power of the General Assembly as to such property devoted to such purposes is paramount and complete, and it may take control of the property at its pleasure and provide for the exercise of the governmental powers by any agency it may select. (*Harris* v. *Board of Supervisors,* 105 Ill. 445; *Heffner* v. *Cass and Morgan Counties,* 193 id. 439.) Municipal corporations proper have a double character,—the one governmental and the other private; but a county is a mere political subdivision of the State, devised as a convenient mode of exercising the political, executive and judicial powers of the State. In *Hollenbeck* v. *County of Winnebago,* 95 Ill. 148, the court, in holding that the county was not liable for negligence of its officers in the public duties enjoined upon them by laws of the State, said: "Counties are but local subdivisions of the State, established by the sovereign power of the State, clothed with but few corporate powers, and these not of a private but rather of a governmental character, relating to the support of the poor, the making of public highways and the general administration of justice within their respective boundaries." The purposes of a court house, public buildings and a jail, which counties are required to erect and maintain, are the administration of justice, the collection

of the public revenue and the performance of public functions. The powers of counties are public and they are not authorized to go into private business. There is no taking of the property of counties by a general law regulating the location of jails.

It is said that the contract was really entered into before the act was approved, but the law and record are both against the argument. The county, in transacting its ordinary business affairs, may appoint an agent, and the statute requires the county board to direct the county clerk to procure books and blanks for the assessment of property and collection of taxes. His contract, within his authority, would bind the county, (*Barnard & Co.* v. *County of Sangamon*, 190 Ill. 116,) but neither the statute nor the general powers of the county board would authorize the appointment of a committee to enter into a contract like this, and, in fact, the authority was not given. The committee reported to the county board the lowest bid, and they were thereupon authorized, after the act became a law, to enter into the contract.

Another ground of objection to the act is that it is local or special in protecting school property alone, but there are well-grounded differences between property used for school children in proximity to a building like a jail, and other property, to justify the classification.

Finally, it is argued that the act is in violation of the constitutional provision which prohibits the removal of county seats without a vote of the people. As "county seat" means the county town as the seat of government the prohibition has no relation to the location of a building at the county seat.

The decree is reversed and the cause remanded to the circuit court, with directions to grant the relief prayed for in the bill.     *Reversed and remanded, with directions.*