THE SURE PURE ICE COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSON *et al.*—(JOSEPHINE MANTHEY, Defendant in Error.)

*Opinion filed February 18, 1926.*

1. WORKMEN'S COMPENSATION—*general rule as to when accident is within the Compensation act.* An accidental injury, to be within the Compensation act, must be of such character that it may be seen to have had its origin in the nature of the employment or have been incidental to the employment, or it must have been the result of a risk to which, by reason of his employment, the injured employee was exposed in a greater degree than if he had not been so employed; and it is not enough that the presence of the injured person at the place he was injured was due to his employment if the injury is sustained by reason of some cause having no relation to the nature of the employment.

2. SAME—*when accidental shooting does not arise out of employment.* The accidental death of an engineer, who was shot by police officers while visiting the place of his employment at night, is not within the Compensation act where the shooting was the result of his refusal to obey the order of the officers to halt, as there is no causal connection between his employment and the accident, which might have happened to anyone in that locality who refused to obey the order of the police officers.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. HARRY M. FISHER, Judge, presiding.

GOOD, CHILDS, BOBB & WESCOTT, (DWIGHT S. BOBB, and F. M. HARTMAN, of counsel,) for plaintiff in error.

J. W. KOUCKY, for defendant in error.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The circuit court of Cook county confirmed an award of the Industrial Commission against the Sure Pure Ice Company for the death of Frank Manthey, and a writ of error was allowed for the review of the record.

The only question is whether the death of Frank Manthey was caused by an accident arising out of his employment. Manthey was killed about 4:30 o'clock the morning of October 6, 1924. He had been for four years in the employ of the plaintiff in error as chief engineer, having charge of the whole plant. His regular hours of work were from eight o'clock A. M. to four o'clock P. M., but he also worked at night whenever he was called. It was his duty to fix anything which broke down at night and to see that the men did their work, and he was frequently at the plant at night in the discharge of his duties. Three men were employed at night work,—an engineer, a puller and a man in the ice house. Henry Bour was an engineer employed by the plaintiff in error, whose hours of work were from midnight until eight o'clock A. M., but he was not on duty the morning of the sixth, as that was his night off. Manthey went to Bour's house on the night of the fifth and asked him to go to the plant with him to see if everything was all right. They went to the plant in Manthey's automobile about one or two o'clock and Manthey went in while Bour remained in the car. Manthey came out about three o'clock and then went back. He came out again, and was standing on the sidewalk on Ravenswood avenue, near the automobile, talking with Mr. Fountaine, who had come with them from Bour's house, when a police automobile came toward them from the south on Cornelia street, around the corner on Ravenswood avenue. There was a light at that corner which was about one hundred feet from them, by which they could see each other and could see to the corner. Bour said to Manthey, "Here comes the squad." Manthey said nothing but turned and walked toward the plant. The police automobile stopped near the Manthey car and the officers got out and called to Manthey to halt when he was about ten feet distant from them, around the loading platform at the corner "where the salt pile was." He did not halt or answer but continued to walk. One

of the officers called to him to halt and said if he did not the officer would fire, and he did fire into the salt pile. Officer Kennedy then called to him to halt, but he walked on to the door of the plant. Kennedy then shot and killed him. He was dead when Kennedy reached him. The policemen were in uniform and were recognized as policemen by Bour as soon as their car turned the corner. Manthey was in the performance of his duties as chief engineer in charge of the plant. Was there an accident arising out of his employment?

The rule is that an accident, to be within the Compensation act, must have had its origin in some risk of the employment, but the cases are so various that it is impossible to establish a fixed rule for determining what is a risk of the employment. There must be some causal relation between the employment and the injury. The injury must be of such a character that it may be seen to have had its origin in the nature of the employment, to have been the result of a risk to which, by reason of his employment, the injured employee was exposed in a greater degree than if he had not been so employed. The injury must be incidental to the nature of the employment, and it is not enough that the presence of the injured person at the place of the injury is because of his employment unless the injury itself is the result of some risk of the employment. If the injury is sustained by reason of some cause having no relation to the nature of the employment it does not arise out of the employment. We have held that an injury to an employee in a fight with another employee growing out of a quarrel about the employer's work in which they were engaged arises out of the employment. In *Pekin Cooperage Co.* v. *Industrial Com.* 285 Ill. 31, we held that there must be some causal relation between the employment and the injury, and though it is not necessary that the injury be one which ought to have been foreseen or expected, it must be one which after the event may be seen to have had

its origin in the nature of the employment.  The injury for which the claimant was held in that case to be entitled to compensation was received in a fight with another employee growing out of a quarrel in regard to the manner of doing their work, and it was held for this reason that it might be inferred that the injury arose out of the employment, because when men are working together at the same work differences may be expected to arise about the manner of doing the work, the use of tools, interference of the workmen with one another, or other details.  *Swift & Co.* v. *Industrial Com.* 287 Ill. 564, was also a case of an injury received in a fight between two employees.  The decision holding that the dispute arose out of the employment and that the employer was liable for compensation was based upon the proposition that the altercation grew out of matters connected with the employee's work and was not purely a personal one, entirely outside the scope of his employment. (*City of Chicago* v. *Industrial Com.* 292 Ill. 406.)  In the case last cited we held that the injury there received at the hands of a fellow-workman did not arise out of the work but as the result of a quarrel over a private matter which was not connected with the employment, and therefore there could be no award of compensation.

There was no causal connection between the duties of Manthey and his shooting by the policeman.  Manthey's duties required him to be at the place where he was at the time he was killed.  The duties of the policemen required them to guard and protect from thieves, robbers and burglars their section of the city, including the plant of the plaintiff in error.  Their attention, as the evidence shows, had been particularly called to the plant of the Certified Ice Cream Company, adjoining the plant of the plaintiff in error, because of four complaints which had been received by the police of stealing from that company, but their duty extended to guarding the whole district.  What happened to Manthey might as well have happened to any man em-

ployed at night anywhere in the section guarded by these policemen. The cause of his death arose from an agency which was entirely outside of his employment, and there was no causal connection between the agency and the employment. Had he walked away anywhere in this police district from these officers after they had ordered him to halt he would probably have been shot as he walked. He was only about thirteen feet distant from the policeman who shot him, and was walking and not running. The officers were in sufficient force to overpower him, but such considerations have no place in this case.

The judgment will be reversed and the award set aside.

*Judgment reversed and award set aside.*