(No. 27386.—

Olson Drilling Company *et al.*, Plaintiffs in Error, *vs.*
The Industrial Commission *et al.*—(Dan D. Wolf,
Defendant in Error.)

*Opinion filed March 21, 1944—Rehearing denied May 11, 1944.*

Pope & Driemeyer, of East St. Louis, for plaintiffs in error.

W. S. Willhite, of Mt. Carmel, for defendant in error.

Mr. Justice Thompson delivered the opinion of the court:

This is a writ of error granted by this court to reverse the judgment of the circuit court of Richland county. The cause arises under the Workmen's Compensation Act. It involves a claim for compensation on account of injuries received by defendant in error, Dan D. Wolf. It is claimed the injuries received were accidental and arose out of and in the course of his employment. Application for adjustment of claim was filed on April 25, 1941, against the Olson Drilling Company, alleging that on February 14, 1941, he was injured at Enfield, Illinois, in an automobile accident which arose out of and in the course of his employment. Wolf, at the time, was en route from an oil well, where he was employed, to the office of the company to deliver a drilling report. The arbitrator awarded compensation for complete permanent disability. The Industrial Commission, on review, sustained the award and the circuit court of Richland county confirmed the decision of the commission.

The evidence reveals that on February 14, 1941, and for some time prior thereto, Dan D. Wolf was employed as a driller by the Olson Drilling Company on an oil well described as "Edwards No. 8," located south of McLeansboro, in Hamilton county and approximately sixty miles south of Olney where Wolf resided. In his employment he commenced work at twelve o'clock midnight and continued until eight o'clock in the morning. His duties were those of a driller and he had charge of the rig while in the tower and was responsible for everything that happened therein. Wolf drove from his residence to the well and from the well to his home each day in an automobile. At times he used his own automobile and at other times he made the trips to and from the well in the car of his son, Robert, who worked with his father at the well, doing any work there he was called on to do. Wolf carried the drilling reports, covering the twenty-four-hour operating period commencing in the morning of the preceding day, to the officer of his employer in Olney. He traveled the same route as he traversed in returning from the well to his home until he reached Olney and passed a shoe factory. Wolf received no additional remuneration for bringing the reports to his employer's office. Nor did he receive an allowance for travel to and from the well. His duties required him to keep the drilling report for the company and on the day of the accident the tool pusher who was at the well signed the drilling report, tore it out of the book and handed it to Wolf with orders to take it to the office, which was located in the Insurance Building at Olney, Illinois. Quoting his words he said: "Take the drilling reports to the office. You won't need to call up this morning." In explanation as to what was meant by, "You won't need to call up," Wolf testified, and it was not disputed, "I usually had to call in from McLeansboro over the phone, and tell them the condition of the well."

He further testified he was required to have the reports in the office "as soon as possible."

The evidence reveals that Wolf carried the reports to the office as many as thirteen times on as many different mornings and that after he reached Olney or the shoe factory, as he stated, he had to take a different route than he would have taken to have gone to his home.

After the accident, employees of the drilling company called to secure the reports with which he had been entrusted and which he had been instructed to take from the well to the drilling company's office.

Shortly after eight o'clock on the morning of February 14, after completing his work, he left in his son's automobile. He was carrying the drilling report and the time sheet to be delivered as instructed, to the office of the company at Olney. While driving on State Route No. 45, several miles from the well, the car in which he was riding collided with an automobile driven on the wrong side of the pavement by one Shoemaker, who was not employed by, and had no connection with, the Olson Drilling Co. Wolf sustained an injury to his spine as the direct result of the collision.

The question presented here is whether or not Wolf's accidental injury arose out of his employment, which must be determined by whether the accidental injury was incidental to the performance of the contract of service, and whether the origin or cause of the accident belonged to and was connected with the contract of service. (*Klug* v. *Industrial Com.* 381 Ill. 608; *Schwartz* v. *Industrial Com.* 379 Ill. 139; *Rainford* v. *Chicago City Railway Co.* 289 Ill. 427.) The Workmen's Compensation Act does not apply to every accidental injury which may happen to an employee during his employment. It does not make the employer an insurer against all injury. The injury contemplated by the act must have its origin in some risk of

the employment. (*Klug* v. *Industrial Com.* 381 Ill. 608; *Schwartz* v. *Industrial Com.* 379 Ill. 139; *Edelweiss Gardens* v. *Industrial Com.* 290 Ill. 459.) The employer is liable for compensation only for an injury which occurs to the employee while performing some act for the employer in the course of his employment, or incidental to it. (*Klug* v. *Industrial Com.* 381 Ill. 608; *Schwartz* v. *Industrial Com.* 379 Ill. 139; *Fairbank Co.* v. *Industrial Com.* 285 Ill. 11.) A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service. (*Boorde* v. *Industrial Com.* 310 Ill. 62.) A prerequisite to the right to compensation is that the accidental injury must arise out of, as well as occur in the course of, the employment, and the mere fact that the duties take the employee to the place of the injury and that, but for the employment, he would not have been there, is not, of itself, sufficient to give rise to the right to compensation. There must be some causal relation between the employment and the injury, and the causative danger must be peculiar to the work and not common to the neighborhood. *Klug* v. *Industrial Com.* 381 Ill. 608; *Great American Indemnity Co.* v. *Industrial Com.* 367 Ill. 241.

In order for an accidental injury to come within the Workmen's Compensation Act it must be of such character that it may seem to have had its origin in the nature of the employment or have been incidental to the employment, or it must have been the result of a risk to which, by reason of the employment, the injured employee was exposed to a greater degree than if he had not been so employed. It is not enough that the presence of the injured person at the place he was injured was due to his employment, if the injury is sustained by reason of some cause having no relation to the nature of the employment. *Klug* v. *Industrial Com.* 381 Ill. 608; *Sure Pure Ice Co.* v. *Industrial Com.* 320 Ill. 332.

Plaintiffs in error contend that as Wolf elected to ride in an automobile to reach his place of employment and also to return home, his employment did not expose him to a risk to a greater degree than if he had not been employed; that the fact he was carrying the drilling report and the time sheet neither contributed to nor increased the danger of personal injury resultant from a collision.

Plaintiffs in error further contend that since the risk of the collision was not incidental to Wolf's employment it could not be said that a causal relation obtained between the employment and the injury, for the reason that Wolf's injury did not originate in a risk connected with or incidental to the employment, and did not arise out of the employment. In support of this contention plaintiffs in error cite the cases of *Sure Pure Ice Co.* v. *Industrial Com.* 320 Ill. 332; *Schwartz* v. *Industrial Com.* 379 Ill. 139, and *Farley* v. *Industrial Com.* 378 Ill. 234.

In the *Sure Pure Ice Company case,* one Frank Manthey was killed about 4:30 o'clock in the morning while he was on the premises of his employer. He had returned to the plant after his working hours were over to ascertain if everything was all right at the plant. It was his duty to fix anything which broke down at night and to see that the men did their work, and he was frequently at the plant at night in the discharge of his duties. While Manthey was walking toward the plant to which he had returned in an early hour of the morning, a police automobile with officers stopped near him, got out and called for him to halt. As he did not do so but continued on, one of the officers shot and killed him as he neared the door of the plant. This court in that case held there was no causal connection between the duties of Manthey and his shooting by the policeman although Manthey's duties required him to be at the place where he was at the time he was killed; that what happened to Manthey might as well have happened to any man employed at night anywhere in the sec-

tion guarded by these policemen; that the cause of his death arose from an agency which was entirely outside of his employment, and that there was no causal connection between the agency and the employment. The court in that case, however, announced the rule that an accident, to be within the compensation act, must have had its origin in some risk of the employment.

In the *Schwartz case,* the plaintiff in error was engaged in the operation of a retail store. One Schwartz was employed in that business as a salesman, and also discharged some duties as manager, or assistant manager, of the store. On Saturday he worked continuously from the time the store opened in the morning until it closed at night. Food was not served to the employees and no place was provided for them to obtain or eat their meals. They were at liberty to go out and eat where they pleased. When the deceased Schwartz went out for lunch, or dinner, he would always leave word where he was going so he might be reached if his assistance was needed or his presence required at the store. Around 4:30 or 5:00 o'clock in the afternoon he proceeded to a restaurant with his fiancé, had his meal and returned to the store. He became ill from the effects of the food he had eaten and later died in a hospital. It was held by this court in that case that the partaking of contaminated food in a nearby restaurant cannot be said to have any causal relation to the employment of the deceased in the retail store of plaintiff in error; that the causative danger—the contaminated food—was not peculiar to the work or incidental to the employment because it did not belong to, nor was it in any way connected with, what the deceased had to do in fulfilling his contract of service. Compensation was therefore denied.

In the *Farley case,* the employee Dwyer, was employed as manager and also served as a clerk in a general merchandise store. He was required as a part of his duties, to take a parcel containing silver money to his home each

evening and bring it back to the store in the morning. On the morning of February 7, 1940, shortly before 7 o'clock A. M., Dwyer left his home to walk to the place of his employment. In about half of the distance between his home and the store he walked across a patch of ice covered with snow, and fell to the ground. In that case the court said, as was held in the case of *Borgeson* v. *Industrial Com.* 368 Ill. 188, "the injury cannot be traced to the employment as a contributing, proximate cause, and does not come from a hazard to which the respondent would not have been equally exposed apart from the employment."

We do not think the facts in those cases are parallel with the facts as shown by the evidence in the instant case. In those cases the causative danger was not peculiar to the work, or incidental to the employment because it did not belong to, nor was it in any way connected with, what the injured employees had to do in fulfilling their contracts of service. The origin or cause of the accidents did not belong to, nor was it in any way connected with, the duties of the injured persons under their contracts of service.

The facts in the instant case show that Wolf was instructed specifically to take the drilling reports, which he had assisted in compiling, direct to the company's office in Olney. From the time he left his place of employment on the instructions of his employer, he was to go direct to the drilling company's office with the reports and time sheets essential to their business. He was instructed to hurry up and, following such instructions, he was carrying out the orders as given him by his employer. The evidence shows that after leaving the well in pursuance of his mission in bringing the reports to his employer's office, he, at times, being so instructed, stopped at McLeansboro, Illinois, an intermediate station, called on the telephone and gave information as to the progress of the well. The fact that this was over the same route that he must take in going home did not in any way lessen the responsibility

of his duties in carrying the reports to his employer's office. He was not carrying the reports home. He was transporting them for delivery to the office of his employer as instructed. The question then arises as to whether or not the accidental injury received was in the course of his employment or arose while he was acting within the duties of his employment or some act incidental thereto. The words "out of" point to the origin of the cause of the accident and the words "in the course of" point to the time, place and circumstances under which the accident occurred. The accident must result from a risk incidental to the employment and while the employee is doing that which he is reasonably required to do within the time of his employment and at the place where he may reasonably be expected to be while discharging the duties of his employment. (*Irwin-Neisler & Co.* v. *Industrial Com.* 346 Ill. 89; *Board of Education* v. *Industrial Com.* 321 Ill. 23.) It was, of course, incumbent upon Wolf to prove that the injury arose out of and in the course of his employment. *United States Fuel Co.* v. *Industrial Com.* 310 Ill. 85.

The first question is whether at the time of the accident Wolf was in the course of his employment. The general rule is that an employment does not begin until the employee reaches the place where he is to work and does not continue after he has left the place of his employment. (*Irwin-Neisler & Co.* v. *Industrial Com.* 346 Ill. 89; *Shegart* v. *Industrial Com.* 336 Ill. 223; *Dambold* v. *Industrial Com.* 323 Ill. 377.) This rule, however, is not applicable where the duties of the employee necessarily take him away from the premises of the employer. (*Irwin-Neisler & Co.* v. *Industrial Com.* 346 Ill. 89.) Under such circumstances the employer may still be liable if the employee is injured and the injury arises out of and in the course of his employment. (*Irwin-Neisler & Co.* v. *Industrial Com.* 346 Ill. 89; *Solar-Sturges Manf. Co.* v. *Industrial Com.* 315 Ill. 352.) Whether an employee who

is on his way to or from his place of employment is in the line of his employment depends upon the circumstances of each case and is largely. a question of fact. (*Irwin-Neisler & Co.* v. *Industrial. Com.* 346 Ill. 89.) In *Porter Co.* v. *Industrial Com.* 301 Ill. 76, the employee was a traveling salesman. He returned from his trip about 11:00 A. M. on an interurban car. The car passed near his home, where he stopped for lunch, after which he started to the office to make a report. While crossing the street to get a street car he was struck by an automobile and injured. It was held that he was in the course of his employment and that the stopping to eat his lunch was not sufficient, of itself, to take the accident out of the operation of the statute. In *Mueller Construction Co.* v. *Industrial Board*, 283 Ill. 148, the duties of the employee required him to cross the street to telephone, and while so doing he was struck by an automobile and injured. It was held that the accident arose out of and in the course of his employment. In *Solar-Sturges Manf. Co.* v. *Industrial Com.* 315 Ill. 352, the employee, a salesman, went on a streetcar to call on a customer. He got off on the side of the car near the customer's address so he would not be required to cross the tracks to reach his destination. The employer allowed him an expense account to be used in buying cigars for customers. The employee crossed the car track and bought some cigars and in returning was struck by a streetcar. It was held that the injury arose out of and in the course of his employment. In *Irwin-Neisler & Co.* v. *Industrial Com.* 346 Ill. 89, one Sawyer started his return trip to Decatur on Monday, when he would otherwise have returned on Sunday, and went by way of Danville when he would otherwise have gone by way of Watseka. He carried samples and circulars which he delivered as directed. While carrying out his duties and operating his automobile the car turned over and Sawyer was injured. In that case the court said: "Auto-

mobiles do not ordinarily turn over under circumstances such as are described by Sawyer in this case, but such an accident is possible as one of the risks of the business in which Sawyer was engaged and as incidental to it. *Dietzen Co.* v. *Industrial Board,* 279 Ill. 11; *Falkner* v. *Stratton,* 245 N. Y. 542, 157 N. E. 850."

In the case of *Puttkammer* v. *Industrial Com.* 371 Ill. 497, one Puttkammer took a load of coal to the Shamrock Inn, unloaded it and left the inn about 4:45 o'clock. He was driving north on Halsted street on his way back to the coal-yard. When he reached the vicinity of One Hundred Seventy-third street the northbound traffic on Halsted street was obstructed by two automobiles that had been in a collision. He pulled over to the east side of the four-lane highway, stopped his truck and went over to the damaged cars. He picked up an injured child and was walking towards his truck when another north-bound automobile struck one of the damaged cars and knocked it against Puttkammer who was thrown to the street and killed. In that case this court held that his injury and death arose out of and in the course of his employment, and there said: "In the main our Workman's Compensation Act was adopted from that of Great Britain. The decisions of the English courts on subjects included in their act which are also found in our own, are of persuasive authority. (*Armour & Co.* v. *Industrial Board,* 275 Ill. 328.) In *McNeice* v. *Singer Sewing Machine Co. Ltd.,* 1911 S. C. 12, 3 N. C. C. A. 278 n., Lord Kinnear said: 'The man had certainly in the course of his employment to traverse this particular road for his employers' purposes, and therefore the dangers and risks of that particular road at the time and on the occasion in question, are, to my mind, incidental to the employment.' "

In the case of *Grossman* v. *Industrial Com.* 376 Ill. 198, one Grossman received a fatal injury while riding in an

automobile in Arkansas. He was making a trip in the interest of his company and while the question there raised was the relationship with the company, it was not denied that at the time of the injury he was making the trip in the interest of the company and his fatal injury, while riding in an automobile in carrying out the duties as assigned to him, was compensable under the Workmen's Compensation Act.

Wolf was employed to take the reports to the office of his employer in Olney and for this purpose it was necessary to use an automobile. If the work of the employee creates the necessity for travel, he is in the course of his employment. Persons using the highway are subjected to certain traffic risks and one of them is the danger of collision. The perils of modern-day travel upon the highways are well known. Risk of accident is an ever-present menace. When it is necessitated by the employment the risks incidental thereto become risks of the employment and remain so as long as the employee is acting in the course of his employer's business. Whether or not the accident had its origin in a risk said to be incidental to the use of the highway and naturally flowing therefrom would, of course, depend upon the particular facts in each case.

In the instant case Wolf was using an automobile as a necessary adjunct to his employer's business and was performing services growing out of and incidental to his employment, and the injuries did in consequence arise out of and in the course of his employment. The judgment of the circuit court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WILSON, dissenting.