JOHN SNOWBALL

*v.*

THE PEOPLE *ex rel.* William Grupe.

*Filed at Mt. Vernon October 27, 1893.*

1. CONTESTED ELECTIONS—*jurisdiction of county court on contest of election of school officers.* The county court has jurisdiction to hear and determine contested elections of all school officers.

2. QUO WARRANTO—*jurisdiction of circuit courts.* By the constitution (sec. 12, art. 6,) the circuit courts are vested with the power, among others, to hear and determine informations in the nature of *quo warranto*, they being proceedings at law.

3. The right to inquire into the authority by which any person assumes to exercise the functions of a public office or franchise belongs to the people, as a part of their sovereignty.

4. Because the statute provides a mode of contesting elections in the county court, it does not follow that the people, in their sovereign capacity, are thereby precluded from inquiring by *quo warranto* into usurpations of office. The two remedies are distinct, the one belonging to the elector, in his individual capacity, as a power granted, and the other to the people, in the right of their sovereignty.

5. This right of the people is not in any manner impaired by statutes granting to electors, in their private capacity as citizens, the right to contest the election of any person assuming to exercise the functions of an office.

6. The rule that when a new right and a remedy for its invasion are conferred by the same statute, parties injured are confined to the statutory redress, does not apply to the people.

7. In the absence of any controlling constitutional restrictions upon the subject, the jurisdiction of the circuit court to proceed by information in the nature of *quo warranto,* is not taken away by a statute which prescribes a special proceeding, unless there are express words in the statute itself taking away such jurisdiction, or unless it appears to be the manifest intention of the legislature to confine the remedy to the prescribed proceeding and to the designated tribunal.

8. SAME—*distinguished from contest of an election.* A proceeding by *quo warranto* is not, strictly speaking, an election contest between two persons claiming the same office. Such proceeding only determines that the person holding the office is or is not a usurper. It does not adjudge the right to the office in any one.

9. ELECTIONS—*validity.* It is essential to the validity of an election that it be held at the time and place provided by law. When the time and place are not fixed by law, but are to be fixed by some authority named in the statute, it is essential to the validity of the election that the time and place be fixed by the very agency designated by law, and none other.

10. SAME—*validity of election under the school laws.* Where a school district lies partly within and partly without a city which has adopted the election law of 1885, it is the duty of the board of education of such district to locate the polling place or places, appoint the judges and clerks, and otherwise conduct the election for school officers in that part of the district that lies without the city. When no polling place is thus designated, the votes cast in such part of the district can not be counted.

11. OFFICE—*of the right to hold.* While the officer who holds a certificate of election from the canvassing board has a *prima facie* title, yet he is not entitled to the office if he did not receive a majority of the legal votes cast at the election. It is the right of the people to go behind the certificate, and determine whether the holder of it is rightfully in office.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the City Court of East St. Louis; the Hon. B. H. CANBY, Judge, presiding.

Mr. F. G. COCKRELL, for the plaintiff in error.

Mr. M. D. SCHAEFER, and Mr. M. MILLARD, for the defendant in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is a *quo warranto* proceeding to try the title of appellant to the office of member of the Board of Education of a school district in St. Clair County, composed of territory lying partly within and partly without the city of East St. Louis. The said city has adopted the Act, approved June 19, 1885, "regulating the holding of elections and declaring the result thereof in cities, villages and incorporated towns in this State." (3 Starr & Cur. Ann. Stat. page 515). The board of education of said district held a meeting and made a general order

for the holding of the election indicated in the information and plea, which afterwards took place on April 18, 1891. The Board of Education caused a notice of the election to be served upon the Board of Election Commissioners of said city, who appointed judges and clerks of election, and fixed the polling places, and gave all notices for holding said election, within that portion of the territory of the district lying within the limits of said city. The Board of Education also caused notices of the election to be posted, but did not at its said meeting, or at any other time, fix any polling place within the territory lying outside of the city, and appointed no judges or clerks for said territory. At eight o'clock on the morning of the day of election the president of the Board of Education, with the consent of the other members, repaired with a ballot box to the Allerton House, located in said outlying territory, and, in accordance with his statement to them that they had a right to do so, seven voters there assembled selected two of their number as judges and one as clerk, who were duly sworn by a notary and took charge of the ballot box, and cast their own votes and received those of the others; and, at said Allerton House, seven votes were cast for appellant, and none for relator. The said polling place was kept open during the time required by law, and thereafter, said vote was, by said judges and clerk, certified to the Board of Election Commissioners of said city, and, within seven days thereafter, presented by them, together with the vote cast in the territory within the limits of said city, to the county court of said county to be canvassed. On the day of the canvass, relator appeared and moved to have said seven votes thrown out, but the motion was overruled by the canvassing board, the vote was canvassed, appellant was duly declared elected, received his certificate of election as a member of the Board of Education, and has been ever since exercising the duties of said office. Thereafter relator filed his petition in said county court for the purpose of contesting said election. After argu-

ment upon demurrer to said petition, the county court held, that it had not been filed within thirty days after the result of said election had been declared, as was required by section 113 of the election law. (1 Starr & Cur. Stat. page 1019; chap. 46, sec. 113). Thereupon relator, upon leave granted, withdrew his petition and dismissed his suit without prejudice; and, on August 5, 1891, application was made to the City Court of East St. Louis to prosecute the present information in the nature of a *quo warranto.* Permission was given to file the information; demurrer thereto was overruled; plea was filed by the defendant; the evidence was embodied in an agreed state of facts. The court below rendered judgment of ouster against the respondent. This judgment has been affirmed by the Appellate Court, and the present appeal is prosecuted from such judgment of affirmance.

Two questions are presented for consideration: *First,* whether the court below had jurisdiction to try appellant's right to the office in a proceeding by *quo warranto; Second,* whether the poll established at the Allerton House can be regarded as a legally authorized voting place.

*First,* did the City Court have jurisdiction to entertain the present proceeding? As it is assumed by both parties that the City Court has the same jurisdiction in the matter as the Circuit Court would have under the same circumstances, we shall treat the case as though the proceeding was begun in the Circuit Court. (*Baker* v. *Rockabrand,* 118 Ill. 365). The point made by counsel for appellant is, that this is merely an election contest, and that, under our statute, such contests can only be determined by the County Court, and not by the Circuit Court in a *quo warranto* proceeding. The election law, after providing for determining election contests in reference to certain specified officials, not including members of boards. of education, provides, in section 98, that "the county court shall hear and determine contests of election of all other county, township and precinct officers and all other officers

for the contesting of whose election no provision is made. (1 Starr & Cur. Ann. Stat. page 1017, chap. 46 of Rev. Stat. sec. 98). Section 13 of article 3 of the Act of May 21, 1889, "to establish and maintain a system of free schools" provides, that, at any school election held under the Act, "the manner of contesting said election shall be the same as prescribed by the general election laws of this State defining the manner of electing magistrates and constables, so far as applicable, subject to the provisions of this Act." In construing these sections of the Election and School Laws, we have held that school officers are of the same class as county, township and precinct officers, and that, therefore, the county court is vested with jurisdiction to try and determine contested elections of school officers. (*Misch* v. *Russell*, 136 Ill. 22). But we have been referred to no case in this State, where it has been held that the county court has exclusive jurisdiction in such matters. There seems to be some disagreement among the authorities upon the question whether proceedings by information in the nature of *quo warranto* are excluded, where a statute prescribes a specific mode for contesting elections, and designates a particular tribunal for determining such contests.

It has been held in Ohio and Pennsylvania, and, perhaps, in some other states, that, where a specific mode of contesting elections has been provided by statute, that mode alone can be resorted to, and that the common law mode of inquiry by proceedings in *quo warranto* will not be entertained. (*The State* v. *Marlow*, 15 Ohio St. 114; *Commonwealth* v. *Leech*, 44 Pa. St. 332; High on Ext. Leg. Rem. sec. 617). It will be found upon examination, that the decisions, which thus hold, are based upon peculiar statutory and constitutional provisions, which do not exist in this State. (*People* v. *Hall*, 80 N. Y. Rep. 117). But independently of such provisions, the weight of authority is in favor of the position, that the special remedy given by statute in such cases is merely cumulative, and not exclusive of the remedy by *quo warranto*. The general

principle is, that, in the absence of any controlling constitutional restrictions upon the subject, the jurisdiction of the courts to proceed by information in the nature of *quo warranto* is not taken away by a statute which prescribes a special proceeding, unless there are express words in the statute itself taking away such jurisdiction, or unless it appears to have been the manifest intention of the legislature to confine the remedy to the prescribed proceeding, and to the designated tribunal. (1 Dillon on Mun. Corp.—4th ed.—new sec. 202, old sec. 141, and notes).

We have been referred to no language in the election law of this State which, either in terms or by necessary implication, expresses a legislative purpose to deprive the Circuit Courts of their *quo warranto* jurisdiction. Section 12 of Article 6 of the present constitution of the State provides, that "the circuit courts shall have original jurisdiction of all cases in law and equity." As *quo warranto* is a common law remedy, the circuit courts are vested by the organic law with the power to entertain it. (*People* v. *Hall, supra; Kane* v. *The People,* 4 Nebraska, 509). In addition to this, the "Act to revise the law in relation to *quo warranto*" provides, that a petition for leave to file an information in the nature of a *quo warranto* in the name of the People of the State, may be presented to "any court of record of competent jurisdiction," in case "any person shall usurp, intrude into, or unlawfully hold or execute any office." (2 Starr & Cur. Stat. page 1871). In the present case, the seven votes cast for the appellant at the Allerton House gave him his majority, and without them he would not have been elected. While the officer, who holds a certificate of election from the canvassing board, has a *prima facie* title, yet he is certainly not entitled to the office, if he did not receive a majority of the legal votes cast at the election. It is the right of the People to go behind the certificate, and determine whether the holder of it is rightfully in office. (2 Dill. on Mun. Corp.—4 ed.—secs. 892, 716).

The true view to take of the subject is, that the proceeding by *quo warranto* is not strictly an election contest between two persons claiming the same office. "That proceeding only determines that the person holding the office is, or is not, a usurper. But, ousting him, if the court finds against him, it adjudges the right to the office to no one." *(People* v. *Londoner*, 13 Col. 303; *State* v. *Francis*, 88 Mo. 557). Under our form of government all power emanates from the people. The right to inquire into the authority, by which any person assumes to exercise the functions of a public office, or franchise, belongs to the people as a part of their sovereignty. In the *quo warranto* proceeding the people are the plaintiffs, whether upon the relation of a third person, or not. The rule that, where a new right and a remedy for its invasion are conferred by the same statute, parties injured are confined to the statutory redress, does not apply to the people. *(People* v. *Hall*, *supra; Dudley* v. *Mayhew*, 3 Comst. 9). Because the statute provides a mode of contesting elections in the county court, it does not follow that the people, in their sovereign capacity, are thereby precluded from inquiring by information in the nature of *quo warranto* into usurpations of office. "The two remedies are distinct, the one belonging to the elector in his individual capacity as a power granted, and the other to the people in the right of their sovereignty." *(People* v. *Holden*, 28 Cal. 123). This right of the people is not "in any manner impaired by statutes granting to electors, in their private capacity as citizens, the right to contest the election of any person assuming to exercise the functions of an office." (High on Ext. Leg. Rem.—2 ed.—sec. 624; McCrary on Elections —3 ed.—sec. 360; Cooley on Const. Lim.—6 ed.—page 785, and note 1; *Com.* v. *Allen*, 70 Pa. St. 465; *People* v. *Londoner*, *supra*, and cases cited; *People* v. *Bird*, 20 Brad. 568; *State* v. *Fitzgerald*, 44 Mo. 425; *Kane* v. *The People*, *supra;* *Linegar* v. *Rittenhouse*, 94 Ill. 208; *The State* v. *Funck*, 17

Iowa, 365; *Chesshire* v. *The People*, 116 Ill. 493; *People* v. *Hall, supra*).

We are of the opinion, that the court below had jurisdiction to entertain the present proceeding.

*Second*, ought the votes cast at the Allerton House to have been counted? The answer to this question depends upon the further question whether the place, where such votes were cast, was a legally established polling-place.

By an Act of the legislature approved and in force on March 23, 1887, and which was in force when this election was held, it is provided that, in all elections thereafter held for school district purposes, in any school district lying partly within and partly without any city which had adopted or might adopt the election law of June, 1885, above referred to, the legal authorities of such school district "shall locate the polling place or places, appoint the judges and clerks, and otherwise conduct the election in that portion or part of the * * * school district that lies without such city," etc. (3 Starr & Cur. Ann. Stat. page 561; Hurd's Rev. Stat. of 1889, page 665). It is conceded that the school district in the present case is under the control of a Board of Education. The legal authority, therefore, whose duty it was to locate the polling place or places, was the Board of Education. By the provisions of the school law it was required, that the Board of Education should give at least ten days' previous notice of the time and place of holding the election. As has already been stated, the Board did not fix the polling place or places, and, as we understand the facts, the notices posted did not designate any place for holding the election.

It is essential to the validity of an election, that it be held at the time and in the place provided by law. (McCrary on Elections,—3 ed.—sec. 118). Where the time and place are not fixed by law, but are fixed by some authority named in the statute, it is essential to the validity of the election, that the

time and place be fixed by the very agency designated by law, and none other. (*Stephens* v. *The People*, 89 Ill. 337). In *Williams* v. *Potter*, 114 Ill. 628, where it appeared, that the statute required the polling places, when more than one was demanded by the excess of the number of voters over those voting at the last preceding general election, to be fixed by the county board, and that a school house, where certain votes were cast at an election, had not been designated or appointed by the county board as a polling place, it was held that such votes could not be counted; and the following language used in that case is applicable to, and decisive of, the case at bar: "A number of voters of the township assemble at a place unauthorized by law, organize, and hold an election for town officers,—and the question is, shall the votes cast at such election be counted? * * * It is clear, upon the plainest principles of law, they cannot be so counted. The whole thing, however well intended, was, in contemplation of law, illegal and void." (*The People* v. *Gochenour*, 54 Ill. 123).

We are of the opinion, that the place in that part of the district outside of the city, where the seven votes in question were cast, was not a legally established polling-place. It follows that said votes should not have been counted. If they had not been counted, appellant would not have received a majority of the votes cast. He was not legally elected; and we think that the trial court properly rendered judgment of *ouster*.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. Justice Phillips took no part in this decision, having heard the case in the Appellate Court.