STATE OF WEST VIRGINIA *ex rel.*

THE BOARD OF EDUCATION OF

THE COUNTY OF KANAWHA. *a corporation*

*v.*

G. KEMP MELTON, *Sheriff of*

*Kanawha County, West Virginia, and*

THE COUNTY COURT OF KANAWHA COUNTY,

*a corporation*

(No. 13402)

Submitted September 6, 1973. Decided November 13, 1973.

*Campbell, Love, Woodroe & Kizer, John O. Kizer* for petitioner.

*Catsonis & Linkous, Leo Catsonis, Thomas L. Linkous* for respondents.

SPROUSE, JUSTICE:

In this proceeding in mandamus, the Board of Education of Kanawha County seeks two types of relief. Its first requested relief is made under a 1973 statute. Having attempted to appoint its own treasurer under this provision, it seeks to require the Sheriff of Kanawha

County, as the respondent, to pay over all funds held on behalf of the Board and thereafter to make monthly payments into the Board's treasury of all funds held for the Board on or before the tenth day of each month. Secondly, the Board of Education asks this Court, under a pre-1973 statute still in existence, to require the Sheriff immediately to settle his accounts of school funds for the Kanawha County School District, and to compel the respondent County Court of Kanawha County to fix a time for such settlement.

The initial relief sought by the relator requires an interpretation of the effect of 1973 amendments upon the laws governing county school funds. It is pertinent, therefore, at the outset of this opinion to note in a general context the law as it existed prior to the action of the Legislature in 1973, and to compare the 1973 changes as they affect this controversy.

Before the adoption of the 1973 amendments, relevant statutes provided that the sheriff was the ex officio treasurer of the county as well as treasurer of other governmental units, including county boards of education, and was to receive, collect and, upon order of the board, disburse all levies and other school monies. The sheriff was authorized, in certain instances, to transfer funds among the various accounts required to be kept. In addition to an annual settlement, the sheriff was required to report each month to the county board a statement of the finances of the county school district.

On April 14, 1973, the Legislature of this State passed Enrolled House Bill No. 1130 (Chapter 121, Acts of the Legislature, Regular Session, 1973, hereinafter referred to as the Act or the 1973 Act) which became effective on July 13, 1973, ninety days from passage. The 1973 Act amended and reenacted several provisions of the Code relating to the fiscal and financial affairs of county school districts, and generally made it possible for a board of education to be more autonomous in its fiscal affairs.

The most salient change for the purpose of resolving the principal issue presented by this petition for a writ of mandamus is the change contained in Chapter 18, Article 9, Section 6, Code, 1931, and added by the 1973 Act. A county board of education by this statute is granted the power to appoint, on or before the first Monday in May, a treasurer for the board, which may be in the alternative the sheriff of the county or the "fiscal officer of the board, or an employee commonly designated as the person in charge of the financial affairs of the county board". In other words, the board is authorized to substitute one of its own employees as its treasurer instead of the sheriff. Should the board by the first Monday in May of any year elect to designate a treasurer other than the sheriff, Section 6 requires the sheriff to transfer to the board the balance of funds in his hands as of June thirtieth in that same year. The transfer is to be completed no later than the first of August of that year. After the initial transfer, it is required by Section 6 that all monthly balances in the county school funds be transferred by the sheriff not later than the tenth day of the following month. Provisions complementing and completing these amendments are contained in other sections of the amendatory act.

The present controversy arose after the Kanawha County Board of Education, purporting to act under Code, 18-9-6, as amended by the 1973 Act, appointed Willis W. Moore, Jr., the Board comptroller, as Treasurer. The Board first appointed Moore on April 24, 1973, and readopted the appointment on July 13, 1973. The Superintendent of Schools of Kanawha County notified the Kanawha County Sheriff by letter on June 29, 1973, of its action appointing Moore as Treasurer, and requested transfer of the school board funds as purportedly provided by Code, 1931, 18-9-6, as amended. The Superintendent repeated this request on July 5, 1973 and again on July 17, 1973. On July 12, 1973, the Sheriff of Kanawha County advised the Kanawha County Superintendent of Schools that he would not comply with their request.

The respondent Kanawha County Sheriff admits that Code, 1931, 18-9-6, as amended, permits the board of education to appoint a treasurer on or before the first Monday in May in any year. He contends, however, that this statute was not effective until July 13, 1973, so the school board could not appoint its own treasurer until May, 1974. The Sheriff asserts he has the responsibility to administer the school funds under the pre-1973 laws until at least July, 1974, and that his first accounting, transfer and settlement duties under the amended provisions are not required until July, 1974.

The School Board's position is that, although the amended provisions did not take effect until July 13, 1973, the law was in existence on April 14, 1973 which, of course, is prior to the first Monday in May, 1973. It contends, therefore, that it was entitled to designate a treasurer in May, 1973, even though the treasurer could not act or operate as such until after July 13, 1973.

The amended sections are admittedly not effective until July 13, 1973. Despite this, can they have some effect after April 14, 1973, the date of enactment, but prior to the effective date July 13, 1973?

There can be no doubt that the effect of these amendments is to permit a county board of education to appoint its own fiscal officer or other employee as treasurer of the board of education. If such an appointment is validly made, the administration of school funds is drastically altered. The initial appointment must be effected "on or before the first Monday in May" of whatever year the board makes such designation. After such a valid appointment, the sheriff clearly has the duty to transfer all appropriate funds to the school board in accordance with provisions of Code, 1931, 18-9-6, as amended, and thereafter to make a transfer of the school board funds on or before the 10th day of each month.

The question is whether the Legislature intended the school boards of the State to be able to take advantage of

these provisions in 1973 or whether it was the legislative intent that they not be operative until 1974. The 1973 Act, containing the amended statutes under consideration, was silent as to the effective date of the Act. The effective date was, therefore, controlled by Section 30, Article VI of the Constitution of West Virginia which provides that no act of the legislature shall take effect until ninety days after its passage, unless the legislature shall otherwise direct by a two-thirds vote of the members elected to each house.

Courts and text writers generally agree a statute speaks as of the time when it takes effect and not of the time it was passed. "Indeed, where a statute does not become operative immediately on its enactment, but the time of its going into effect is postponed until a later date, either by virtue of its own terms or a general statutory or constitutional provision, it ordinarily does not have any effect until the stated period has expired." 50 AM. JUR., *Statutes,* Section 500, page 518. See also 2 SUTHERLAND, STATUTORY CONSTRUCTION, Chapter 33, § 33.07, pages 11-12. The relator, Board of Education, however, relies on an exception to this doctrine announced by some courts which hold that a statute can have some effect after its passage by a legislature, but before its effective date. 50 AM. JUR., *Statutes,* Section 500, page 518.

An enactment of the Illinois Legislature was involved in such a decision. The Legislature of that State on May 22, 1895, enacted a statute establishing an eastern Illinois normal school and providing for the appointments of trustees among other things. The governor signed the bill on the same date, but under the provisions of the Illinois Constitution, the Act was not to take effect until July 1, 1895. On June 15, 1895, two weeks before the effective date of the Act, the governor appointed trustees as provided by the law. The Illinois Supreme Court, in holding the appointments of the governor to be valid, stated that even though the law did not become effective until July 1, it was in existence from the date of its

approval by the governor on May 22, and under his constitutional authority for appointing officers, he could appoint the trustees. The opinion also stated: "The trustees, however, could do nothing to carry out the provisions of the act until the law took effect." *People ex rel. Graham v. Inglis,* 161 Ill. 256, 263, 43 N.E. 1103, 1105.

*White v. Barrett,* 45 Ill. 2d 206, 258 N.E.2d 334, involved a decision as to an Illinois act passed on April 19, 1967, with an effective date of January 1, 1968. The April 19 law provided a certain tax status for plaintiffs by exempting their property from a particular taxation method. A subsequent law was passed on July 17, 1967, repealing the April 19 law. The petitioner argued that the earlier law could not be repealed by the July 17, 1967 Act inasmuch as it was not in effect until January, 1968. The Illinois court held that the existence of the law and the effective date involve two distinct considerations, and that, since the law was in existence, it could be repealed prior to its effective date. See also *Smith v. Thomas,* 317 Ill. 150, 147 N.E. 788; *Board of Education of School District No. 41 v. Morgan,* 316 Ill. 143, 147 N.E. 34.

There are a number of Federal cases holding state laws invalid where the state laws were passed after the enactment of a Federal statute on the same subject, even though the state legislation was passed prior to the Federal law's effective date. These cases relate to the Federal preemption doctrine, that is the preemption of a legislative area by the Federal government to the exclusion of a state interest when the United States Congress has passed a statute under appropriate jurisdiction. These cases, while not persuasive to the issue here because they deal peculiarly with the Federal preemption doctrine, nonetheless demonstrate how a statute can be in existence for one purpose even though not operational until a later effective date. *Erie Railroad Company v. People of the State of New York,* 233 U.S.

671; *Northern Pacific Railway Co. v. State of Washington ex rel. Atkinson,* 222 U.S. 370.

A number of state courts, however, seem to hold that a statute is not in existence for any purpose until its statutory or constitutional effective date. 50 AM. JUR., *Statutes,* Section 500, page 518. See for example *County School Board of Fairfax County v. Town of Herndon,* 194 Va. 810, 75 S.E.2d 474, involving the effective date of the creation of a county executive form of government in Fairfax County. The executive form of government was adopted by referendum in 1950, but it was not to become effective until January 1, 1952. The court stated that, when the operation of a statute has been postponed to a time subsequent to its enactment, it ordinarily has no effect until the stated period has expired. See also *City of Detroit v. General Foods Corporation,* 39 Mich. App. 180, 197 N.W.2d 315; *Regal Properties v. Donovitz,* 479 S.W.2d 748 (Tex. Civ. App.); *Burks v. Commonwealth,* 126 Va. 763, 101 S.E. 230; *City of Roanoke v. Elliott,* 123 Va. 393, 96 S.E. 819.

The exact point in issue has not been decided in West Virginia. Legislative and constitutional policy bearing on the issue has been considered, however, by this Court on several occasions, and the decisions of this Court in this area generally reflect the policy of this State concerning the validity of actions taken by officials after the enactment of a statute, but prior to its effective date.

In 1891, a criminal case arose in Logan County and the convicted defendant attacked the law providing for the selection of jury commissioners. The Act was passed by the Legislature on February 27, 1891 and signed by the Governor on March 4, 1891. Jury commissioners were appointed on the 1st day of June, 1891. The defendant contended that "ninety days after its passage" contained in Section 30, Article VI of the Constitution of West Virginia, describing the postponing of effective dates of legislation, meant ninety days after the bill was approved by the Governor. The Court held, however,

that "passage" related to the date the Legislature passed the bill and, that being the case, the jury commissioners were appointed after the ninety days. The Court stated among other things, that the Governor had no legislative functions, stating that "His veto amounts to an appeal for 'reconsideration' by the legislative branch, and not to a defeasance of the passage of the bill". *State v. Mounts,* 36 W.Va. 179, 186, 14 S.E. 407, 409.

In a 1915 West Virginia case involving a city election from Mingo County, the Court interpreted a new charter law providing that "All persons holding office at the time of the passage of this act shall continue in office [until the date when the governor appointed other temporary members of the council]." The Court held that the term "passage of this act" was synonymous with the time it was to take effect—ninety days after its enactment, and upheld the right of the city council members holding office at the effective date of the Act. *State ex rel. Peters v. Pinson,* 76 W.Va. 572, 85 S.E. 786. Again, this holding does not have a direct bearing on the present case, but it generally indicates the policy of our court in the past which has given great weight to the effective date of the act and no consideration to whether or not an act has any "operational" effect after the actual time when the Legislature voted on the measure, but before the effective date.

The relator and the respondent admit and we agree that the 1973 Act had a legal standing in that it existed from the time of its passage, but that it could not become "operational" until July 13, 1973, ninety days after the date of passage. The question is whether its "existence" gave to it sufficient effect prior to July 13, 1973 for the Board to make the controverted appointment of its treasurer.

Court decisions in a majority of jurisdictions would appear to invalidate all actions purported to be taken under a statute prior to its effective date. The policy of previous West Virginia decisions seems to point in this

direction. It is not necessary, however, to go that far in reaching the decision in this case. Even if it were assumed that some acts of mere formality could be performed after a law comes into existence but prior to the effective date of the act in question, by no stretch of imagination can the action of the Board of Education of Kanawha County in this instance be considered mere formality. The statutes substantially altered the financial procedures of the sheriffs of the State relating to school funds, and made it possible for the county boards of education to assume important new responsibilities. The appointment of a treasurer by a county board of education is an important step in implementing the statutes. The Legislature was silent as to whether it intended boards of education to appoint treasurers in 1973, the year in which the statutes were passed. The Legislature, which spends a great deal of its time dealing with fiscal matters, is certainly aware of the fiscal year basis on which the sheriff and the boards of education interrelate. The Legislature, which deals with school funds annually, surely was aware of the complexity of the various fiscal relationships. The legislation was passed April 14, 1973, and effective July 13, 1973. The first effective action of an official under the provisions of the legislation was conceived to be the appointment of a treasurer. If the Legislature had contemplated such action by the Board to be authorized in May, 1973, the county sheriffs would have been required to completely revise complex procedures in their office by the end of July, 1973 or on three months notice. It is safe to assume that had the Legislature intended the sheriffs and boards of education of the State to drastically revise their financial procedures on such short notice, they would have specifically so provided.

"The power to enact laws includes the power to fix a future day on which the act will take effect. A statute with a definite future day fixed for its commencement has effect only from that time. * * * The purpose of the future effective date is to inform persons of the provisions

of a statute before it becomes effective in order that they may take steps to protect their rights and discharge their obligations." 2 SUTHERLAND, STATUTORY CONSTRUCTION, § 33.07, pages 11-12. See also *City of Roanoke v. Elliott, supra,* at 401, 96 S.E. at 822, wherein the court said: "The reason for postponing the operation of statutes, as is done by section 53 of the Constitution, was that the people might be informed of their contents before they became effective." The rationale of the statement in *City of Roanoke* certainly seems to be applicable here. The citizens of West Virginia in general, and certainly the administrative officers of the various counties handling school funds, can be much better apprised and be in a better position to perform their duties if they are advised sufficiently in advance of a time when they must change from one operating procedure to another. This is particularly true where they are administering important functions, and the more complex the procedures and functions, the more valid the reason for such advance notice.

The action of the Kanawha County Board of Education in appointing a treasurer in May and July, 1973, was premature, and the Sheriff of Kanawha County was correct in interpreting his duties as they existed prior to the enactment of House Bill 1130, Chapter 121, Acts of the Legislature, Regular Session, 1973. The part of the requested relief, seeking transfer of funds based on the Board's action in prematurely appointing its treasurer, must be denied.

The question presented by the relator's second request for relief is another matter. The relator, the Kanawha County Board of Education, alleges that the Kanawha County Court refuses to fix a time for settlement and the Sheriff refuses to settle his school fund account as required by a pre-1973 law still in effect. The County Court, although named as a respondent in this proceeding and duly served, did not appear to answer this allegation. The Board of Education prays that the Kanawha County

Court and the Sheriff of Kanawha County be required to take appropriate action to settle the Sheriff's account of the school funds for the Kanawha County School District as required by Code, 1931, 6-8-7, as amended. Section 7 requires now, as it did prior to its 1973 amendment, that "The county court of each county shall appoint a time immediately following the first day of July in each year, and in any event within thirty days thereafter, * * * for the settlement of the school funds of each district * * * ". The Section requires the sheriff, upon at least five days notice given by the county court, to present his accounting which shall be then and there settled. This Section is unchanged by the 1973 amendments except for the requirement of the attendance of a school board treasurer after he has been appointed. Whatever duty the county court and the sheriff had prior to the 1973 Act, they retain.

Code, 1931, 6-8-7, as amended, employs the word "shall" in describing the time in which the county procedures must be followed. Generally the use of the word "shall" in statutes limits or prevents the exercise of discretion, however, such use is not always conclusive in determining whether "shall" represents a mandatory or directory instruction. *Canyon Public Service District v. Tasa Coal Company,* 156 W.Va. 606, 195 S.E.2d 647. There is no universal rule by which directory provisions may be distinguished from those which are mandatory. 1A SUTHERLAND, STATUTORY CONSTRUCTION, § 25.03, page 299. Generally, whether a statute is mandatory or directory is determined from the intention of the Legislature. If that intention is to make compliance with the statute essential to the validity of the act directed to be done, the statute is mandatory. *State ex rel. Kennedy v. Boles,* 150 W.Va. 504, 147 S.E.2d 391; *State v. Carduff,* 142 W.Va. 18, 93 S.E.2d 502; *State ex rel. Thompson v. Fry,* 137 W.Va. 321, 71 S.E.2d 449. The intention of the Legislature is to be gleaned from the entire act. 82 C.J.S., *Statutes,* Section 376, pages 869-872.

"Generally the rule is where a statute specifies a time within which a public officer is to perform an act regarding the rights and duties of others, it will be considered as merely directory, unless the nature of the act to be performed or the language shows that the designation of time was intended as a *limitation of* power." *Nelms v. Vaughan,* 84 Va. 696, 699-70, 5 S.E. 704, 706. See also *Ebbert v. Tucker,* 123 .W.Va. 385, 15 S.E.2d 583. Similarly, where the time or manner of performance directed by the statute is not essential to the purpose of the statute, provisions in regard to time or method are generally interpreted as directory. 1A SUTHERLAND, STATUTORY CONSTRUCTION, § 25.04, page 301.

It would appear that the time provisions in Code, 1931, 6-8-7, as amended, are directory. However, the directory nature of these time provisions does not give the county court or the sheriff a license to ignore the duties placed upon them by the legislature. There certainly must be substantial compliance with these time provisions. The time for complying with the statute had passed when this petition was filed. The respondent County Court filed no answer to the petition, and the respondent Sheriff maintains he has no duty to make a settlement until 1974 because the 1973 Act was not effective until July 13, 1973. The general provisions of Code, 6-8-7, requiring a settlement and setting out the manner of settlement, which existed prior to the action of the Legislature in 1973 and are retained under the 1973 Act, mandatorily require an annual settlement. While the provisions as to time are directory, they require substantial compliance. The respondents have not only not substantially complied with the law, but have apparently made no attempt to comply with it.

For reasons stated in this opinion, the writ of mandamus to require the Sheriff of Kanawha County to transfer all balances in all county school funds in his hands as of the 30th day of June, 1973, and thereafter on the 10th day of each month is denied. Though the relator may not

obtain all the relief which it seeks in this proceeding, it is entitled to have a settlement and a time fixed for settlement of the school funds for Kanawha County. A writ of mandamus may be molded to afford the relator the relief to which it is entitled. *The Board of Trustees of Policemen's Pension or Relief Fund v. City of Huntington,* 142 W.Va. 217, 96 S.E.2d 225. The writ in this proceeding is molded to require the respondent Sheriff to make a settlement and to require the County Court of Kanawha County to fix a time of settlement of the funds of the Kanawha County School District and to give at least five days notice of the time so appointed to the relator and the respondent Sheriff, and to proceed to settle the Sheriff's account of the school funds of Kanawha County School District as of the 30th day of June, 1973 and the writ of mandamus, as molded, is awarded. The respondents, The County Court of Kanawha County and the Sheriff of Kanawha County, are ordered to proceed forthwith to comply with this order.

*Writ, as molded, awarded.*