JANE KORTE-REINHEIMER *et al.*, Plaintiffs-Appellees, *v.* THE CITY COUNCIL OF THE CITY OF PALOS HILLS *et al.*, Defendants.—(THE CITY COUNCIL OF THE CITY OF PALOS HILLS *et al.*, Defendants-Appellants.)

First District (2nd Division)    No. 80-3031

Opinion filed February 17, 1981.—Rehearing denied March 9, 1981.

Andrew M. Raucci, of Kusper & Raucci, Chartered, of Chicago, for appellants.

Robert M. Winter, of Gierach & Schussler, Ltd., of Oak Lawn, for appellees.

Mr. PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

This appeal proceeds from an order of court awarding a writ of *mandamus* requiring the presentation of a public policy proposition to the electorate of the city of Palos Hills. A series of objections and hearings intervened and the proposition election still had not been set as of December 1, 1980, the effective date of the new Election Consolidation Act of Illinois (Ill. Rev. Stat. 1979, ch. 46, pars. 2A—1, 2A—1.1, 2A—1.2) (sometimes hereinafter the Act). The issues presented for review are whether: the trial court could properly order a special election pursuant to a petition and on a date not contemplated within the provisions of the Act; the provisions of the Act, if applied to the circumstances presented, would be unconstitutionally retroactive; plaintiffs were guilty of *laches*; and plaintiffs had a clear legal right to *mandamus* under the facts presented. For the reasons which follow, we reverse.

The public policy petition was filed on July 3, 1980, with the city clerk of Palos Hills. The petition proposed to submit to Palos Hills electors the question of reducing the number of aldermen from ten to five, with one, instead of two, aldermen representing each ward. Such action is authorized by section 3—4—8 of the Illinois Municipal Code of 1961 (Ill. Rev. Stat. 1979, ch. 24, par. 3—4—8). The petition requested that a special election be held on or before August 26, 1980. By section 3—2—7 of the Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 3—2—7), all special elections specifically were then required to be conducted in conformity with the Illinois Election Code (Ill. Rev. Stat. 1979, ch. 46, par. 1—1 *et seq.*), "as heretofore and hereafter amended." Sometime prior to August 1, the city clerk selected September 16, 1980, as the date for the special election, although that duty was at that time delegated to the corporate authorities, *i.e.*, the city council (Ill. Rev. Stat. 1979, ch. 24, par. 1—1—2(2)), by section 3—2—7.

On August 1, 1980, an objection to the petition thus altered was filed by a citizen, which triggered a hearing before the municipal officers electoral board (hereinafter electoral board), convened pursuant to sections 10—8 and 10—9 of the Election Code (Ill. Rev. Stat. 1979, ch. 46, pars. 10—8, 10—9). That objection was overruled by the electoral board on August 13, and the public policy petition was returned to the city clerk for the selection of an election date by the city clerk. On August 23, judicial review was sought by the objectors in the circuit court of Cook County, challenging the August 13 electoral board decision. The Palos Hills City Council met on September 4, but refused to confirm the date set by the city clerk for the special election by a vote of seven to three. On September 10, the circuit court found that the municipal clerk had no authority to set a special election and reversed the decision of the electoral board. No appeal was taken from that order, the time for which expired on October 10, 1980. On October 10, plaintiffs filed a complaint for *mandamus* seeking a writ directing that a special election be held in the city of Palos Hills on a date prior to November 28 or 29, 1980, at which to consider the proposition.

Within the time allowed, defendants, city council and seven of its 10 members, filed their appearances and a motion to dismiss. The remaining three city council members filed individual pro se answers to the petition, admitting the allegations of the complaint and requesting that the relief sought by the complaint be granted. On November 13, the motion to dismiss was denied and the trial court granted the writ of *mandamus* without allowing defendants leave to answer. The order was stayed until November 20, however, in order to permit defendants the opportunity to interpose defenses. At the November 20 hearing, after hearing arguments of counsel and considering a stipulation of facts, the court entered an

order finding that plaintiffs had a clear legal right to the writ of *mandamus* and that defendants had a duty to conduct the special election notwithstanding the absence of such a duty under the Act, which became effective December 1, 1980. The trial court then vacated the stay of execution of the writ of *mandamus* and denied each of defendants' alternative motions: for a stay pending appeal; or for a five-day stay to allow presentation of a motion for a stay to the appellate court. The court was advised that the city council would be meeting on the evening of November 20 and that its next scheduled meeting would not be held until December 4, 1980. The court then announced that although it would not grant a stay, it did not expect the city council to order the special election to be held by passing an ordinance that evening.

No such ordinance was passed on November 20, nor was one adopted on November 22 at a special meeting. On November 25, defendants filed their notice of appeal, as well as a motion for an emergency stay and expedited appeal, with suggestions in support thereof. Plaintiffs filed their objections to the motion and a supplemental short record. This court granted the motion for a stay on November 26 and set forth an expedited filing and briefing schedule, followed by an expedited hearing scheduled for mid-January, 1981, which has now taken place.

Defendants claim that the court ordered election at which the public policy proposition was to have been considered would have been in contravention of certain provisions of the new Act, primarily for three reasons: first, an election held after December 1, 1980, the effective date of the Act, would fall on a date other than one permitted by its terms (Ill. Rev. Stat. 1979, ch. 46, par. 2A—1); second, the writ issued by the trial court directed defendant city council and its members to schedule and conduct an election which, by statute after December 1, 1980, they no longer had any duty to perform (Ill. Rev. Stat. 1979, ch. 24, par. 3—2—7); and third, the petition, which specified a particular election at which the question was to be submitted, had to be limited to the election so designated and could not be valid as to any other election (Ill. Rev. Stat. 1979, ch. 46, par. 28—2, eff. Dec. 1, 1980). Because of the foregoing statutory provisions, defendants insist, the writ of *mandamus* commanded an election to be conducted by public officials who had no authority to do so at the time the election could have taken place, on a date not provided by statute, and based upon a statutorily invalid petition, and was in error.

The rules governing the construction of election statutes have been set forth in a number of cases, among which is *Gann v. Harrisburg Community Unit School District* (1966), 73 Ill. App. 2d 103, 106-07, 218 N.E.2d 833, in which the court observed:

"Generally, an election should be held at the time and in the place provided by law in order that it have validity. Snowball v. People ex rel. Grupe, 147 Ill 260, 35 NE 538. However, a distinction has been drawn between directory and mandatory provisions. Siedschlag v. May, 363 Ill 538, 2 NE2d 836; People v. Crossley, 261 Ill 78, 103 NE 537. The failure to follow a mandatory provision will invalidate an otherwise valid election, while the failure to follow a directory provision will not. People v. Graham, supra. * * *

The determination whether a statutory provision is mandatory or directory has depended upon the following criteria: (1) whether the statutory scheme expressly or impliedly provides that the failure to follow the provision shall render an election void; * * *."

As appears in *Gann*, as well as in *People ex rel. Meyer v. Kerner* (1966), 35 Ill. 2d 33, 219 N.E.2d 617; *Thomas v. Marcin* (1977), 51 Ill. App. 3d 82, 366 N.E.2d 416; and *Secco v. Chicago Transit Authority* (1954), 2 Ill. App. 2d 239, 119 N.E.2d 471, the courts are more inclined to validate an election already held and find the provisions of the applicable statute directory, than in a case such as that before us, in which an election has not as yet taken place. We find that certain provisions of the new Act which became effective prior to the time the proposition was to have been voted upon were mandatory and that others, while directory in nature, were worded in such affirmative language as to have required a result other than that which obtained in the case *sub judice*.

Section 28—2 of the Election Consolidation Act (Ill. Rev. Stat. 1979, ch. 46, par. 28—2, effective December 1, 1980), provides, in part, that "* * * [p]etitions for the submission of public questions * * * *must be filed* * * *"" under the regulations which thereafter follow, including the provision that "[a] petition, * * * initiating a public question *which specifies a particular election at which the question is to be submitted shall be so limited, and shall not be valid as to any other election*, other than * * *"" an emergency referendum not involved in this case (emphasis supplied). The public policy petition presented in the instant case on July 3, 1980, requested that the election related to the question be held on or before August 26, 1980. The city clerk without authorization thereafter changed the date to September 16, 1980. That action, taken before the electoral board on an objection, was sustained by the board and the public policy petition was returned to the city clerk for the selection of an election date by that functionary. Judicial review, however, upheld the objection on September 10. Thus, the date sought by the petition, August 26, and the date set by the city clerk, September 16, were both rendered inoperative. Plaintiffs thereafter requested the corporate authorities to set still another date for the election, which they declined to do, resulting in

the filing of plaintiffs' complaint for *mandamus.* Plaintiffs sought a writ directing that a special election be held prior to November 28 or 29, 1980, constituting still other dates not in conformity with the July 3 petition, and bringing the matter to the brink of the effective date of the new Act. When the writ of *mandamus* was allowed and defendants' motion for a stay thereof was denied, the trial court was advised of and recognized the improbability that a date could or would be set by the Palos Hills corporate authorities prior to December 1, 1980. Thus, the original time limit for the election agreed to by the signatories to the petition filed July 3, 1980, was disregarded, and multiple suggested substitute election dates thereafter were proposed. The writ of *mandamus,* permitting a new date to be set for the election after December 1, 1980, when amended section 28—2 became effective, subjected the petition for election, and the election which would flow from it, to a posture of invalidity by the terms of the statute which then clearly applied.

■■ The language of the new Act does not expressly invalidate a public policy election held contrary to the dates which are therein set forth, as in the case of the petition; however, section 2A—1 (Ill. Rev. Stat. 1979, ch. 46, par. 2A—1) clearly and emphatically provides that "no public question may be submitted to any voters in this State * * * except pursuant to this Code, notwithstanding the provisions of any other statute." These provisions had been adopted and approved some three years prior to the activities undertaken in this case, June 29, 1977, and September 22, 1977, respectively, and were originally made effective on December 1, 1978, a date subsequently changed to December 1, 1980. The law thus existed from November 29, 1978, when the Governor's veto was overridden (Pub. Act 80-1469); only its operation was postponed for a future date. (See *White v. Barrett* (1970), 45 Ill. 2d 206, 258 N.E.2d 334.) The Act assertively limits the dates and the number of elections which can be held in a given year: a maximum of three elections in odd-numbered years; and a maximum of two elections in even-numbered years, under section 2A—1.1.

■■ Public policy questions are specifically made submissible to voters at any election designated by the consolidated schedule of elections established by the new Act (Ill. Rev. Stat. 1979, ch. 46, par. 2A—1.2(f)). The filing of a new petition, in consonance with these public policy considerations, will not deny plaintiffs their rights to have the question submitted, or their constitutional rights to vote thereon, but will simply postpone the day upon which the issue is to be decided. Plaintiffs suggest that the delay in permitting consideration of the policy question will result in the continuation in office of five aldermen whose terms might have been brought to an end and that the resultant expense of maintaining them in office might have been saved had favorable results been obtained at the

election. Apart from the conjectural nature of this argument, it should be noted that when the original petition met with resistance in September of 1980, the recalcitrance of the corporate authorities and their demonstrated determination to test by litigation the procedures to be undertaken became evident, and the effective date of the Election Consolidation Act drew closer, plaintiffs could have circulated a new petition with relative ease, and obtained the requisite 320 names in a petition setting forth an election date in consonance with section 2A—1.1(b) (Ill. Rev. Stat. 1979, ch. 46, par. 2A—1.1(b)), in time for the aldermanic election to be held on the first Tuesay in April under the terms of the new Act, and thereby have secured the desired action on the petition together with all constitutional rights to which they deem themselves entitled. This they chose not to do and in consequence must await the next permissible election date for presentation of the question.

■■ Plaintiffs urge that the provisions of the Election Consolidation Act should not be construed retroactively so as to apply to their right to have an election conducted under the law as it existed when they filed their petition on July 3, 1980, that all steps necessary to call the special election, except the actual calling of the election, had already occurred prior to December 1, 1980, and that to deny them their right to have an election called to consider the question they propose would violate their constitutional rights. Questions concerning retroactivity of statutes have been considered extensively by Illinois courts and range over a broad variety of fact situations. (See, *e.g., McKinley v. McIntyre* (1935), 360 Ill. 382, 388, 196 N.E. 506; *Orlicki v. McCarthy* (1954), 4 Ill. 2d 342, 353, 122 N.E.2d 513; *Hacker v. Myers* (1961), 33 Ill. App. 2d 322, 179 N.E.2d 404; *Duna v. National Bank of Austin* (1961), 28 Ill. App. 2d 500, 171 N.E.2d 802.) From the foregoing authorities, some applicable general principles of construction in determining whether statutes may be applied prospectively only, or retroactively, emerge: there is no vested right in any particular remedy or method of procedure; when a change of law affects only the remedy or procedure, all rights of action will be enforceable under the new procedure without regard to whether they accrued before or after such change in the law; when the legislature creates procedural rights under a statute, it may also amend those rights and impose time limitations for bringing actions thereunder; and the intention of the legislature should be examined in determining whether such an amendment should apply retroactively, as evidenced by its terminology and from the evil designed to be remedied by the amendment.

■■ The statutory language used in the Act, that a petition "* * * which specifies a particular election at which the question is to be submitted shall be so limited, and shall not be valid as to any other election, * * *" (Ill. Rev. Stat. 1979, ch. 46, par. 28—2), and that "no public question may

be submitted to any voters in this State * * * except pursuant to this Code, notwithstanding the provisions of any other statute" (Ill. Rev. Stat. 1979, ch. 46, par. 2A—1(a)) demonstrates a strong legislative intent that the procedures to be followed in restricting the number of aldermen should conform to the amendatory terms irrespective of when a petition raising the question may have been filed. Where, as here, legislative intent is manifest from the plain language of a statute, that language cannot be construed differently. (*Weisberg v. Byrne* (1981), 92 Ill. App. 3d 780, 784, 416 N.E.2d 298.) With respect to the evils to be remedied, it is clear that the legislature in section 28—2 sought to avoid the confusion emanating from circulating a petition setting a proposition for consideration at one election which does not take place on the appointed day, as well as precluding the unfairness inherent in obscuring consideration of important questions by shifting the elections thereon from one date to another or still others. Section 2A—1(a) operates as a reasonable limitation upon the number of times that voters may be directed to the polls, and suggests opportunities for greater participation in the electoral process by citizens at more familiar and convenient times and in concert with dates on which the electorate will consider other important issues and fill other offices, thereby affording more widespread attention of potential voting participants. Further, no constitutional rights will be contravened upon application of the provisions of the Act to the proposed public policy question presented in the instant case, since plaintiffs will be accorded a similar remedy under the new procedures should they choose to pursue it. See, *e.g., Boytor v. City of Aurora* (1980), 81 Ill. 2d 308, 316, 410 N.E.2d 1.

From the resolution of the issues set forth above, other issues raised need not be considered. Plaintiffs were not possessed of a clear legal right to the *mandamus* which they sought under the circumstances presented here. (*Arthur Weil & Co. v. Board of Education* (1977), 49 Ill. App. 3d 649, 364 N.E.2d 542.) Accordingly, the writ of *mandamus* directing the corporate authorities to conduct an election at which the question set forth in the July 3, 1980, petition may be considered by the citizens of the city of Palos Hills must be reversed and the order vacated.

Reversed and vacated.

DOWNING and PERLIN, JJ., concur.