RODNEY TODD, as Special Adm'r of the Estate of Tiffany Todd, a Deceased Minor, Plaintiff-Appellant, v. ELDA SMITH *et al.*, as Adm'rs of the Estate of Herbert Cook, Deceased, Defendants-Appellees (Herbert Smith *et al.*, Defendants).

Third District   No. 3—94—0123

Opinion filed November 9, 1994.—Rehearing denied December 21, 1994.

Law Offices of Donald J. Nolan, of Chicago (Joseph T. McGuire, of counsel), and Kevin E. Bry, of Oak Park, for appellant.

F. Donald Henson, of Herbolsheimer, Lannon, Henson, Duncan & Reagan, P.C., of La Salle (Jill W. Broderick, of counsel), for appellees.

JUSTICE McCUSKEY delivered the opinion of the court:

The plaintiff, Rodney Todd, brought this action seeking recovery for the death of his minor daughter in a house fire. His complaint alleged that Herbert Cook (landlord) had a statutory duty to install smoke detectors and that the landlord's failure to do so proximately caused his daughter's death. The circuit court of La Salle County found the landlord had no statutory duties at the time of the fire. The plaintiff appeals. We affirm the decision of the trial court.

Prior to March 27, 1988, Todd lived with his family as tenants in the landlord's private residence near Earlville in La Salle County. On March 27, 1988, a fire destroyed the home. Todd's daughter, Tiffany, was killed in the fire.

As administrator of Tiffany's estate, Todd filed a six-count complaint against the landlord and Herbert and Kathy Smith in the circuit court of Cook County on March 26, 1990. The administrators of the landlord's estate, Elda Smith and Dollie Todd, were substituted as defendants following the landlord's death. Counts I through III alleged common-law negligence against the Smiths. Counts IV through VI were based on the Smoke Detector Act (Ill. Rev. Stat. 1991, ch. 127$^1$/$_2$, par. 801 *et seq.*) (the Act) and alleged that the landlord had a duty to install smoke detectors in his home. On the defendants' motion, the case was transferred to the circuit court of La Salle County on March 6, 1991.

On May 5, 1993, the defendants filed a motion to dismiss counts IV through VI of the complaint. In response, Todd argued that the Act, as of the date of its passage, imposed on the landlord a civil duty

requiring the installation of smoke detectors. On July 15, 1993, the trial court dismissed counts IV through VI.

On August 12, 1993, Todd filed an amended complaint containing two counts which specifically alleged that section 3 of the Act furnished a statutory basis for a duty to install smoke detectors. The defendants again filed a motion to dismiss on August 20, 1993. They argued that no civil duty could have arisen by virtue of the Act since section 3 took effect after the house fire. After a hearing on December 16, 1993, the trial court dismissed with prejudice the counts alleging a violation of the Act. This timely appeal followed. We note that Herbert and Kathy Smith were dismissed as defendants before Todd filed his notice of appeal. As a result, they are not parties to this appeal.

First, we will discuss whether the Act imposed on the landlord any civil duties to install smoke detectors in the home on March 27, 1988. In this opinion, we will only discuss the application of the Act to landlords. The Act became effective on August 14, 1987. Section 3 of the Act (Ill. Rev. Stat. 1991, ch. 127$^1$/2, par. 803) sets forth its operative provisions. Section 3(d) imposes on homeowners the responsibility to install smoke detectors and requires tenants to test and maintain the detectors upon taking possession of premises. (Ill. Rev. Stat. 1991, ch. 127$^1$/2, par. 803(d).) Section 3(e) provides for a delayed effective date, as follows:

> "The requirements of this Section shall apply to any dwelling unit in existence on July 1, 1988, *beginning on that date.*"

(Emphasis added.) (Ill. Rev. Stat. 1991, ch. 127$^1$/2, par. 803(e).) Section 4 imposes criminal penalties for the violation of the Act. Ill. Rev. Stat. 1991, ch. 127$^1$/2, pars. 804(a), (b).

The Fourth District Appellate Court has recently recognized in the Act an implied private cause of action against landlords. In *Bybee v. O'Hagen* (1993), 243 Ill. App. 3d 49, 612 N.E.2d 99, the court held that a private cause of action promotes the policies supporting the Act's passage, *i.e.,* the protection of inhabitants of dwellings from injuries due to smoke or fire. Additionally, the court held that a private right of action was necessary to provide plaintiffs with an adequate remedy at law because tenants could not recover from landlords through other statutory provisions or based on common law. *Bybee,* 243 Ill. App. 3d at 52-53, 612 N.E.2d at 101-02.

The crucial question in this appeal is whether the civil liability announced in *Bybee* arose on the effective date of sections 1, 2, and 4 of the Act (August 14, 1987) or on the effective date of section 3 (July 1, 1988), which includes the duty to install smoke detectors. For the reasons which follow, we conclude that the Act did not impose any civil liability until July 1, 1988.

In Illinois, a law is deemed to exist on the date of its approval by the General Assembly and the governor. (Ill. Const. 1970, art. IV, §§ 9(a) through (c); *People ex rel. Graham v. Inglis* (1896), 161 Ill. 256, 262, 43 N.E. 1103, 1104; *Korte-Reinheimer v. City Council* (1981), 94 Ill. App. 3d 219, 224, 418 N.E.2d 783, 786.) However, the operation of a law may be postponed to a future date. (*White v. Barrett* (1970), 45 Ill. 2d 206, 209, 258 N.E.2d 334, 336; *Graham*, 161 Ill. at 262, 43 N.E. at 1104.) The primary reason for a delayed effective date is to acquaint the public with the provisions of a new statute. However, until an act "becomes operative as a law the public are not compelled to govern their actions by it." (*Dunne v. County of Rock Island* (1918), 283 Ill. 628, 636, 119 N.E. 591, 594; see also *Smith v. Thomas* (1925), 317 Ill. 150, 157, 147 N.E. 788, 790.) "The existence of a law and the time when it shall take effect are two separate and distinct things." *Graham*, 161 Ill. at 262, 43 N.E. at 1104.

Ordinarily, a statute cannot change the rights or duties of entities within its purview before its effective date. (See *Krause v. Peoria Housing Authority* (1939), 370 Ill. 356, 375, 19 N.E.2d 193, 203; *Smith*, 317 Ill. at 157, 147 N.E.2d at 790; see also *State ex rel. Board of Education v. Melton* (1973), 157 W. Va. 154, 163, 198 S.E.2d 130, 135.) However, our supreme court has recognized certain limited exceptions to this general rule in *Graham* and *Dunne*. *Graham* involved a question of constitutional authority. (*Graham*, 161 Ill. at 262-63, 43 N.E. at 1104-05.) In *Dunne*, the issue before the court was a statute's effect on contractual obligations. (*Dunne*, 283 Ill. at 636, 119 N.E. at 594.) Following our review of these decisions, we conclude that *Graham* and *Dunne* are factually distinguishable and have no application to this case.

Here, the Act created a substantive duty to install smoke detectors in property leased to tenants, accompanied by criminal penalties for failure to comply. The Act has drastically altered the legal responsibilities of a landlord from the duties previously required by common law. We hold that requiring compliance with section 3 of the Act prior to its effective date by allowing civil liability would be inconsistent with the plain language of the Act and prior decisions of the Illinois Supreme Court. See *White*, 45 Ill. 2d at 209, 258 N.E.2d at 336; *Krause*, 370 Ill. at 375, 19 N.E.2d at 203; *Smith*, 317 Ill. at 157, 147 N.E. at 790.

In the case before us, the Act became law on August 14, 1987. Section 3, the operative portion of the Act, requires landlords to install smoke detectors. However, section 3 did *not* take effect until July 1, 1988. The fire in this case occurred on March 27, 1988, which was prior to the effective date of section 3. Under the very

terms of section 3, the landlord was not required to bring his home into compliance until July 1, 1988. Because section 3 was not in effect at the time of the fire, no criminal prosecution of the landlord could have been based on a violation of section 3. Likewise, the same section of the Act cannot serve as a basis for the landlord's civil liability based on the record in this case. Our conclusion is consistent with the policy of providing notice and a "grace period" in order to allow persons the opportunity to comply with the mandates of the Act. (See *Dunne*, 283 Ill. at 636, 119 N.E. at 594; see also *Dewberry v. Auto-Owners Insurance Co.* (Fla. 1978), 363 So. 2d 1077, 1080; *Melton*, 157 W. Va. at 163-64, 198 S.E.2d at 135.) Accordingly, we hold that the trial court's analysis was correct when it found that Todd could not sustain a cause of action based on the plain language of the Act.

In the alternative, Todd urges us to reevaluate the common law which relieves landlords of the duty to either install or provide smoke detectors. Todd argues that the Act and the Fourth District Appellate Court's opinion in *Bybee* have completely abrogated the common law rule. We cannot agree with Todd's argument.

■ The common law did not impose a civil duty upon landlords to install smoke detectors in property leased to a tenant. (*Bybee*, 243 Ill. App. 3d at 53, 612 N.E.2d at 102, citing *Webster v. Heim* (1980), 80 Ill. App. 3d 315, 317, 399 N.E.2d 690, 691-92, and *Galayda v. Penman* (1980), 80 Ill. App. 3d 423, 426, 399 N.E.2d 656, 658-59.) *Bybee* recognized only a limited exception to the common law rule based on section 3 of the Act. However, the key distinction we see is that section 3 *was* in effect at the time of the fire in *Bybee*. Therefore, we hold that *Bybee* has no application in this case. Accordingly, we decline Todd's invitation to further abrogate the common law rule.

In summary, we conclude that section 3 of the Smoke Detector Act does not give rise to any liability due to the landlord's failure to install smoke detectors prior to July 1, 1988. Also, we hold that the *Bybee* exception to the common law rule of landlord nonliability for failure to install smoke detectors did not arise until section 3 took effect on July 1, 1988. For the reasons indicated, the judgment of the circuit court of La Salle County is affirmed.

Affirmed.

STOUDER, J., concurs.

JUSTICE BRESLIN, dissenting:
The legislative history of the Smoke Detector Act clearly demonstrates that the entire Act became effective on August 14,

1987. Subsections 3(e) and (f) provided, however, that no criminal sanctions could be imposed for violations of the Act until after July 1, 1988, in the case of dwellings in existence on that date or the first day of occupancy in the case of dwellings constructed, reconstructed or substantially remodelled after December 31, 1987. (425 ILCS 60/3(e), (f) (West 1992).) The question for us then becomes, "Did the General Assembly mean to defer the effective date of the Act, or did it mean only to allow a period during which the public would have a chance to conform its behavior to the requirements of the Act without fear of criminal prosecution?"

After reviewing the portions of the legislative debate contained in the record on appeal, I cannot agree with the majority that the General Assembly meant to defer the effective date of the Act. As sponsor of the bill which created the Act, Senator Kustra stated, "First and foremost, this bill is an educational process. We have to get people out there to *** install them in their homes ***." (85th Ill. Gen. Assem., Senate Proceedings, June 26, 1987, at 88.) Clearly, the primary concern was to require smoke detectors in homes and leased properties in order to save lives. (85th Ill. Gen. Assem., Senate Proceedings, June 26, 1987, at 78-79.) The criminal penalties contained in the Act were a secondary concern.

By passing the Act the General Assembly rejected the common law principle that a landlord has no duty to maintain a fire detection or alarm system in leased premises. Based on my review of the legislative history of the Act, I cannot conclude that the General Assembly meant to say that the public policy of the State would not be changed until after the grace periods had expired. To the contrary, the General Assembly felt so strongly in favor of the change in public policy that it made the Act effective immediately upon signature by the Governor. Therefore, I would hold that the Act, effective some seven months before the fire which took Tiffany Todd's life, may be the basis for the imposition of a civil duty upon the defendant.

The passage of the Act, however, skews the common law analysis and raises the question, "Since the General Assembly has already acted to change the common law, need the courts address the issue?" For the sake of Tiffany Todd's family, the answer is yes.

In *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, the Illinois Supreme Court addressed the issue of whether our State should abandon the principle of contributory negligence and instead adopt comparative negligence. After noting that the General Assembly had been faced with bills calling for the abolition of contributory negligence on six occasions and yet had failed to enact any of them,

the court announced: "We believe that the proper relationship between the legislature and the court is one of cooperation and assistance in examining and changing the common law to conform with the ever-changing demands of the community." (*Alvis*, 85 Ill. 2d at 23, 421 N.E.2d at 896.) Clearly, then, the courts may analyze the issue of the existence of a common law duty independent of the actions taken by the General Assembly.

The elements of the common law duty analysis include the foreseeability and likelihood of injury, the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the defendant. (*Swett v. Village of Algonquin* (1988), 169 Ill. App. 3d 78, 523 N.E.2d 594.) The danger of fire is certainly foreseeable. The severity of the harm is great—loss of property and perhaps loss of life. The burden of requiring the landlord to install a working smoke detector is minimal with today's technology. Smoke detectors are small, inexpensive and easy to install. In return, they can save lives and thousands, if not millions, of dollars in property loss. Based on the severity of the potential harm and the relative ease of protecting against it, I would hold that a common law duty should be imposed upon landlords to provide smoke detectors on their leased premises.

Accordingly, I would hold not only that the Smoke Detector Act imposed a duty upon the defendant to install smoke detectors in the home he leased to Tiffany Todd's family, but also that such a duty should be imposed at common law.